CONSUMER LAW OFFICE OF MARIE NOEL APPEL
Marie Noel Appel (SBN 187483)
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Tel. (415) 901-0508
Fax. (415) 901-0504

(Additional Counsel Listed on Signature Page)

Attorneys for Plaintiffs,
Elmer and Kathy Buick

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

ELMER and KATHY BUICK

Plaintiffs,

vs.

WORLD SAVINGS BANK, TRANSAMERICAN FINANCIAL CORPORATION,

Defendants.

**Case No:** 2:07-CV-01447-MCE-KJM

**FIRST AMENDED COMPLAINT FOR RESCISSION AND DAMAGES UNDER TRUTH IN LENDING ACT (15 U.S.C. §1601 *et. seq.*), AND VIOLATIONS OF STATE LAW**

Action Filed:
Trial Date: None Set

JURY TRIAL DEMAND

## INTRODUCTION

1 Plaintiffs Elmer and Kathy Buick seek rescission of their mortgage pursuant to 15 U.S.C. §1635 and related relief pursuant to 15 U.S.C. §1640. Plaintiffs also charge defendants with violation of California law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to Title 28 of the United States Code, Sections 1331 and 1337 because plaintiffs' claims under the Truth in Lending Act arise under federal law. This Court has supplemental jurisdiction over plaintiffs' claims under state law

pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28 U.S.C. §1367.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(c) because the defendants do business in this district and plaintiffs' claims arose here.

**PARTIES**

4. Defendant World Savings Bank is a mortgage lender that does business in this district, among other places. Defendant World Savings originated, owns and services plaintiffs' mortgage. Defendant Transamerican Financial Corporation is a mortgage broker that does business in this district, among other places. Defendant Transamerican acted as plaintiffs' mortgage broker in the challenged transaction.

5. Plaintiffs Elmer and Kathy Buick, husband and wife, are residents of California.

**BACKGROUND**

6. In 2004, defendant World Savings marketed a mortgage known as the Pick-a-Payment Equity Builder loan. A distinctive feature of this loan product was that when interest rates rise the interest rate on the loan increases more quickly than the required minimum payment, resulting in an increased principal balance on the loan (i.e. the customer owing more than the amount originally borrowed), a condition known as negative amortization. Perhaps because negative amortization is a negative from a marketing standpoint, the words "Equity Builder" were included in the name of the mortgage product in order to convey misleading impression that the loan product would help homeowners build up, rather than reduce, the equity in their homes.

7. World Savings marketed its loan products through a variety of agents. One of those agents was Dirk Kuivenhoven, also known as Dirk Johnson, also known as Mark Rawlings. In 2000, Mr. Kuivenhoven filed for bankruptcy but his petition was dismissed because he provided false information to the bankruptcy court. Mr. Kuivenhoven is a licensed California mortgage broker. In 2004, Mr. Kuivenhoven was the Sacramento branch manager of defendant Transamerican Financial Corporation.

8. World Savings paid Mr. Kuivenhoven to market its loans pursuant to a contract

which gave World Savings the right to control who he could market to and what Mr. Kuivenhoven could say about the World Savings loan products he sold. The agreement between World Savings and Mr. Kuivenhoven also prohibited Mr. Kuivenhoven from disclosing to customers his affiliation and agency relationship with World Savings.

9. In March 2004, Mr. Kuivenhoven, using his alias Dirk Johnson and using the letterhead of Direct Lenders (apparently an alias for Transamerican), sent a letter to plaintiffs offering to reduce their mortgage payments by as much as $1,035 per month by getting them a new mortgage with an interest rate of 3.5%. The letter told plaintiffs:

> Here's what you can expect from me:
>
> 1. I handle all of the details from your first call to closing.
> 2. I keep you up to date and well informed as we walk thru the process.
> 3. I make sure you get the best rate and loan possible.
> 4. I give you honest straight forward information.

Exhibit A.

10. Mr. Kuivenhoven met with plaintiffs, told them he would get them an Equity Builder loan with an initial interest rate of 1.95%. Mr. Kuivenhoven assured plaintiffs they could convert the mortgage into a fixed rate loan simply by contacting World Savings and asking to lock in a rate. Mr. Kuivenhoven gave a document to plaintiffs showing them that the initial interest rate on the loan would be 1.95% and that their loan balance would decrease if they made the required minimum payments. See Exhibit B. Mr. Kuivenhoven gave another document to plaintiffs which showed them that over the course of five years they would pay $22,038 less with the loan product he was offering than they would with a traditional 30 year fixed rate mortgage with an interest rate of 6.5%. See Exhibit C. A third document which Mr. Kuivenhoven gave to plaintiffs showed them that, over the course of 30 years, their mortgage interest rate would never exceed 4.798% and that with bi-weekly payments that began at $396 and peaked at $616 in the eighth year of the mortgage, they would be able to pay off the mortgage in 25 years. See Exhibit D. In early May of 2004, Mr. Kuivenhoven prepared a World Savings loan application for plaintiffs which showed a mortgage interest rate of 1.95%

and did not disclose that the loan was an adjustable rate mortgage. See Exhibit E.

11. Plaintiffs trusted, believed and relied upon Mr. Kuivenhoven's representations about the World Savings Equity Builder loan. They decided to refinance their mortgage with World Savings. At the closing in June 2004, they signed the loan papers without reading them, assuming that they were consistent with what Mr. Kuivenhoven had told them.

12. Plaintiffs' confidence in Mr. Kuivenhoven, World Savings and Transamerican Financial was misplaced. The loan terms were not as promised and represented. Instead, there was a bait and switch. The loan papers provide that plaintiffs' loan starts with an initial interest rate of 4.785% but adjusts within two months of the closing and can go as high as 11.950%. Currently, the interest rate on plaintiffs' loan is approximately 9.033%. This is a much higher interest rate than plaintiffs had before their deal with World Savings. The loan terms are also far worse for plaintiffs than the deal they were promised and far worse than they could have gotten (since their credit scores were over 700) in a fair market transaction.

13. In exchange for getting plaintiffs to sign the loan papers, World Savings paid Mr. Kuivenhoven and/or Transamerican Financial $4,320, which was over and above the amount that Mr. Kuivenhoven and Transamerican charged plaintiffs for acting as their broker.

**COUNT ONE -- TRUTH IN LENDING ACT**

14. Plaintiffs incorporate paragraphs one through thirteen above.

15. World Savings' disclosures to plaintiffs did not comply with the requirements of the Truth in Lending Act. To understand how the disclosures were defective, some background is helpful.

**REGULATORY FRAMEWORK**

16. The Truth in Lending Act ("TILA"), 15 U.S.C. §1601 et. seq. requires the clear, fair, conspicuous and accurate disclosure of the costs and terms of credit. The statute's purpose is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful disclosure of credit terms so that the consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.

17. Accordingly, the Board of Governors of the Federal Reserve System

promulgated Regulation Z to implement the TILA. 12 C.F.R. §226.1(a). A creditor is required by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. §226.17(a)(1). Regulation Z sets out certain guidelines for creditors to follow when disclosing the amount financed, the finance charge, and the annual percentage rate to the consumer and demands that these disclosures be accurate. 12 C.F.R. §§226.18, 226.22, 226.5.

18. Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. §226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. §226.18(g)(1).

19. The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.

15 U.S.C. §1635(a).

20. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. §1635(b).

21. To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. §1635(a).

22. Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. §226.23(a)(1).

23. The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose[]" the consumer's rescission rights. <u>See</u> 12 C.F.R. §226.23(b)(1).

24. More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in §226.36(b)). The notice shall be on a separate document that identifies the

transaction and shall clearly and conspicuously disclose the following:

> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
>
> (ii) The consumer's right to rescind the transaction.
>
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
>
> (iv) The effects of rescission, as described in paragraph (d) of this section.
>
> (v) The date the rescission period expires.

12 C.F.R. §226.23(b)(1).

25. Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

> When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. §226.23(d)(1).

26. Subparagraph (d)(2) states:

> Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. §226.23(d)(2).

**DEFECTIVE DISCLOSURES**

27. World Savings' disclosures to plaintiffs were defective in a number of respects. First, the Notice of Right to Cancel forms that were given to the Buicks at the closing misstate the date on which the rescission period expires, a violation of 12 C.F.R. §226.23(b)(1)(v).

28. Second, World Savings did not give plaintiffs the proper number of copies of their Notice of Right to Cancel forms, a violation of 12 C.F.R. §226.23(b)(1).

29. Third, by describing the Pick-a-Payment loan as an Equity Builder, World Savings misled plaintiffs as to the potential for and consequences of negative amortization, a

violation of 12 C.F.R. §226.5(b).

30. Fourth, by leading plaintiffs to believe that their initial mortgage interest rate would be 1.98% and that the interest rate on the loan would never exceed 4.798%, World Savings misled plaintiffs as to the cost of credit in violation of 12 C.F.R. §226.18.

31. Fifth, by falsely assuring plaintiffs that they would be able to switch to a fixed rate loan at no cost when in fact the loan provided for a substantial prepayment penalty during the first three years, World Savings misled plaintiffs as to the cost of credit in violation of 12 C.F.R. §226.18.

32. Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years. See 12 C.F.R. §226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first").

33. World Savings' rescission and material TILA disclosures were defective. Accordingly, plaintiffs sent a rescission notice to World Savings on May 7, 2007.

34. Within twenty days of receiving the rescission notice, defendant should have paid back to plaintiffs any money or property that plaintiffs paid to it in connection with the loan. See 12 C.F.R. §226.23(d)(2). Defendant has not done either.

35. Defendant's failure to honor the rescission request is a violation of the Truth in Lending Act. Plaintiffs are entitled to rescission plus statutory damages and other relief.

**COUNT TWO -- VIOLATION OF CALIFORNIA LAW**

36. Plaintiffs incorporate paragraphs one through thirty-five above.

37. In connection with trade or commerce, defendants made false and misleading statements to plaintiffs intending to induce reliance. More specifically, defendants, acting through their agent Dirk Kuivenhoven, engaged in a bait and switch by baiting plaintiffs into the mortgage transaction by offering a relatively favorable set of terms and then switching to less favorable terms.

38. Defendants' false and misleading statements to plaintiffs violated plaintiffs'

rights under California law.

39. Defendants' false and misleading statements deceived plaintiffs and proximately caused them injury.

40. Defendants also defrauded plaintiffs and violated their rights under California law by making it appear that Kuivenhoven and Transamerican were working for plaintiffs and were loyal to their best interests when, in fact, Kuivenhoven and Transamerican were employed by an adverse party. Defendants wrongfully concealed Kuivenhoven's conflict of interest. It was also a fraud and breach of fiduciary duty for Kuivenhoven to represent that he would get plaintiffs the best possible loan terms and that their mortgage interest rate would start at 1.95% and never exceed 4.798%. Defendants are responsible for this fraud because Kuivenhoven was their agent. Defendants are also responsible because they knowingly participated in the fraudulent misconduct.

41. Defendants are also liable to plaintiffs because they were negligent in employing Kuivenhoven and negligent in allowing him to perpetrate frauds on customers.

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a) Canceling defendant World Savings' security interest in plaintiffs' home and ordering defendant World Savings to provide plaintiffs with the money to which plaintiffs are entitled to under 12 C.F.R. §226.23(d)(2);

b) Awarding plaintiffs actual and punitive damages;

c) Awarding appropriate statutory damages; ordering defendants to pay costs, penalties, and attorneys fees;

d) Granting such other relief as the Court deems just and proper.

Respectfully submitted:

Date: August 13, 2007

By: ______________________

Marie Noel Appel, Attorneys for Plaintiffs
ELMER AND KATHY BUICK

Consumer Law Office of Marie Noel Appel
44 Montgomery Street, Suite 3830
San Francisco, California 94104
Tel. (415) 901-0508
Fax. (415) 901-0504

OF COUNSEL:

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
P: (312) 960-1802
F: (312) 960-1936
lawofficedh@yahoo.com

# EXHIBIT A

*Your Payments with*
**Chevy Chase Bk. F.s.b.**
***And* Chevy Chase Bk. F.s.b.**
***Could be Reduced and Fixed at $ 718 Per Month***
***Plus Get $50,000 To Pay-off Bills at $ 943***

**Direct Lenders**
**A California Mortgage Banker**
**6728 Admiral Ave.**
**Fair Oaks .CA 95628**

**1-888-509-4954**

March 10, 2004

Elmer & Kathy Buick Jr.
181 Porter Ln
Auburn CA 95602-9541

**Buick Jr. File # 053 020 068 000**

Dear Elmer & Kathy,

Here's a choice, save approximately $ 560 or $1,035 CASH every month, you decide and choose the best option for your family. Our research indicates you could easily keep a substantial amount of money in your account by re-financing Chevy Chase Bk. F.s.b. and Chevy Chase Bk. F.s.b.. The recent turmoil in our financial markets have again given us the lowest interest rates in over forty years.

***CONSIDER THIS:*** IT"S YOUR MONEY, keep it. The ***"TheSavingsMaximizer"*** loan saves you approximately $ 560 per month, $12,000 for the lifetime of your current mortgages. We also found that many homeowners have bills other than their home mortgages totaling about $50,000. ***"TheDebtBuster"*** loan saves you approximately $500.00 per month, MORE TO KEEP!

**"*TheSavingsMaximizer*" 30-Year Fixed Rate ARM Drops Your Payment to $ 718 monthly**

Your loan would be $160,000. This pays off your first mortgage of about $ 89,000 and the second of approx. $ 71,000. The current interest rate is 3.500%* (APR 4.250%). Your new payment would be $ 718 monthly. If your family is growing, or your income fluctuates you may be able to sock away a lot of money for your retirement account.

**"*TheDebtBuster*" Consolidates Your 1st and 2nd *and up to* $50,000 *in Bills!***

Your loan would be $210,000 with a monthly payment of $ 943. The interest rate is 3.500% and the APR is 4.250%. As mentioned above this $50,000 can be used to pay-off bills, but it can also be used for any other worthwhile purpose. When we deliver this loan peoples lives are dramatically improved.

Here's what you can expect from me:

1. I handle all of the details from your first call to closing.
2. I keep you up to date and well informed as we walk thru the process.
3. I make sure you get the best rate and loan possible.
4. I give you honest straight forward information.

**MAKE NO PAYMENT TILL....*JUNE 2004*....IF YOU GET STARTED TODAY!**

Call **TOLL-FREE (888) 509-4954** and we will promptly answer all your questions and begin processing your loan request. For faster service complete the attached form and fax it to us at **(916) 663-9647**.

Sincerely,

*Dirk Johnson*

Dirk Johnson
Branch Manager

Email: directlender@infostations.com
**Call Mon-Friday 9:00am-7:00pm**
**Toll Free (888) 509-4954**

**Complete this form and fax it to (916) 663-9647**

Licensed
State of CA
CFL License #6071266
EQUAL HOUSING LENDER
*Underwriter Approval Required
Rates Subject to Change
Some Conditions Apply

# REDACTED

# EXHIBIT B

# OPTIONS LOAN WORKSHEET

## TRANS AMERICAN FINANCIAL

| Loan Analysis for MR. & MRS. BUICK | |
|---|---|
| Options Loan Amount | $216,000 |
| Options Start Rate | 1.95% |
| Options Term | 30 |
| Second Loan Amount | $0 |
| Second Loan Rate | 0.00% |
| Traditional 30-Yr. Fixed Loan Amount | $216,000 |
| Traditional Mortgage Rate | 6.500% |
| Traditional Mortgage Term | 30 |
| Mortgage Insurance | None |
| Home Value | $355,000 |
| Annual Appreciation Rate | 10.00% |

*The Equity Builder is a true bi-weekly loan in that the monthly payment is divided in half and paid every two weeks. There are 26 bi-weekly periods each year.*

"Options Loan" vs TRADITIONAL 30-Yr MTG

*The calculations shown in the charts below represent the end of each year*

| | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 |
|---|---|---|---|---|---|---|
| Minimum Payment | $859 | $924 | $903 | $1,067 | $1,147 | $1,233 |
| 30-Yr. Pymt | $1,365 | $1,365 | $1,365 | $1,365 | $1,365 | $1,365 |
| Cash Flow | $6,074 | $5,301 | $4,470 | $3,577 | $2,516 | $1,584 |
| Deferred Interest | $0 | $0 | $0 | $0 | $0 | $0 |
| Loan Balance | $215,561 | $214,806 | $213,160 | $210,521 | $206,788 | $201,776 |
| Home Value | $390,500 | $429,568 | $472,505 | $519,756 | $571,731 | $628,904 |
| Loan to Value | 56% | 50% | 45% | 41% | 36% | 32% |

# EXHIBIT C

# PUT THE "OPTIONS" CASH FLOW TO WORK FOR YOU!

## 5 YEAR CASH FLOW

| Options Cash Flow Analysis | Traditional 30 Year Fixed Rate @ 6.500% | Power Options Loan @ 1.95% | Power Options Cash Flow Over Fixed |
|---|---|---|---|
| Year 1 | $16,383 | $10,309 | $6,074 |
| Year 2 | $16,383 | $11,082 | $5,301 |
| Year 3 | $16,383 | $11,913 | $4,470 |
| Year 4 | $16,383 | $12,807 | $3,577 |
| Year 5 | $16,383 | $13,767 | $2,616 |
| 5 Year Totals | $81,915 | $59,878 | $22,038 |

Cash Flow is determined by subtracting the minimum "Options" loan payment, including secondary financing, from the 30-Year payment.

## USE THE CASH FLOW TO "BOOM" ANY SECOND MORTGAGE!

| Second Mortgage Analysis | Standard Second Loan Balance @ 0.00% | Power Options Second Loan Balance |
|---|---|---|
| End of Year 1 | $0 | $0 |
| End of Year 2 | $0 | $0 |
| End of Year 3 | $0 | $0 |
| End of Year 4 | $0 | $0 |
| Balance End of Year 5 | $0 | $0 |

## USE THE CASH FLOW TO PAY OFF CREDIT CARD DEBT

| End Of Year Balances | Normal Credit Card Balance | Options Credit Card Balance | Options Interest Savings |
|---|---|---|---|
| Year 1 | $0.00 | $0.00 | $0 |
| Year 2 | $0.00 | $0.00 | $0 |
| Year 3 | $0.00 | $0.00 | $0 |
| Year 4 | $0.00 | $0.00 | $0 |
| Year 5 | $0.00 | $0.00 | $0 |

## USE THE CASH FLOW FOR INVESTING FOR THE FUTURE

| Options Investment Analysis | Normal Savings Account @ 2.00% | Investment Account @ 10.00% | 401k Investment Account @ 10.00% |
|---|---|---|---|
| Year 1 | $6,130 | $6,361 | $9,541 |
| Year 2 | $11,604 | $12,578 | $18,887 |
| Year 3 | $16,350 | $18,576 | $27,863 |
| Year 4 | $20,289 | $24,266 | $36,399 |
| Year 5 | $23,339 | $29,546 | $44,319 |
| Years 6-10 | $25,791 | $46,612 | $72,918 |
| Years 11-15 | $28,501 | $79,982 | $119,973 |
| Years 16-20 | $31,496 | $131,590 | $197,393 |
| Years 21-25 | $34,806 | $216,515 | $324,773 |
| Years 26-30 | $38,483 | $356,235 | $534,352 |

The investment scenarios above assume payments into interest-bearing accounts for up to five years. After five years, no additional funds are added and the investment grows based on a consistent rate of return. The 401k investment account assumes a 50% company match.

Payments assume maximum annual payment increase with a constant index. Actual results may vary. The Options start rate remains in effect for 1 month. The APR is subject to increase after the loan closes. This is not a commitment to lend. Standard credit card payment is assumed to be 3% of the balance.

# EXHIBIT D

# THE OPTIONS LOAN

| Year | Interest Rate | 1st Mtg Mortgage Payment (Bi-Weekly) | 2nd Mtg Mortgage Payment (per Month) | Total Monthly Payment (*See Below) | Total Annual Payments | End of Year Balance |
|---|---|---|---|---|---|---|
| 1 | 4.798% | $396 | $0 | $859 | $10,309 | $215,581 |
| 2 | 4.798% | $426 | $0 | $924 | $21,391 | $214,805 |
| 3 | 4.798% | $458 | $0 | $993 | $33,304 | $213,160 |
| 4 | 4.798% | $493 | $0 | $1,067 | $46,111 | $210,621 |
| 5 | 4.798% | $530 | $0 | $1,147 | $59,878 | $206,768 |
| 6 | 4.798% | $569 | $0 | $1,233 | $74,677 | $201,775 |
| 7 | 4.798% | $612 | $0 | $1,326 | $90,587 | $195,401 |
| 8 | 4.798% | $616 | $0 | $1,335 | $106,601 | $188,607 |
| 9 | 4.798% | $616 | $0 | $1,335 | $122,615 | $181,479 |
| 10 | 4.798% | $616 | $0 | $1,335 | $138,629 | $174,001 |
| 11 | 4.798% | $616 | $0 | $1,335 | $154,644 | $166,156 |
| 12 | 4.798% | $616 | $0 | $1,335 | $170,658 | $157,926 |
| 13 | 4.798% | $616 | $0 | $1,335 | $186,672 | $149,292 |
| 14 | 4.798% | $616 | $0 | $1,335 | $202,686 | $140,233 |
| 15 | 4.798% | $616 | $0 | $1,335 | $218,700 | $130,730 |
| 16 | 4.798% | $616 | $0 | $1,335 | $234,714 | $120,760 |
| 17 | 4.798% | $616 | $0 | $1,335 | $250,728 | $110,301 |
| 18 | 4.798% | $616 | $0 | $1,335 | $266,742 | $99,328 |
| 19 | 4.798% | $616 | $0 | $1,335 | $282,756 | $87,816 |
| 20 | 4.798% | $616 | $0 | $1,335 | $298,771 | $75,740 |
| 21 | 4.798% | $616 | $0 | $1,335 | $314,785 | $63,070 |
| 22 | 4.798% | $616 | $0 | $1,335 | $330,799 | $49,777 |
| 23 | 4.798% | $616 | $0 | $1,335 | $346,813 | $35,833 |
| 24 | 4.798% | $616 | $0 | $1,335 | $362,827 | $21,203 |
| 25 | 4.798% | $616 | $0 | $1,335 | $378,841 | $5,855 |
| 26 | 4.798% | $616 | $0 | $1,335 | $394,855 | $0 |
| 27 | 4.798% | $0 | $0 | $0 | $0 | $0 |
| 28 | 4.798% | $0 | $0 | $0 | $0 | $0 |
| 29 | 4.798% | $0 | $0 | $0 | $0 | $0 |
| 30 | 4.798% | $0 | $0 | $0 | $0 | $0 |

2.98 08

** The First Mortgage is a bi-weekly loan that in which a half payment is made every two weeks. The total monthly payment is determined by multiplying the bi-weekly loan payment by 26, dividing by 12, and then adding the second mortgage payment to arrive at an estimated equivalent monthly payment*

Payments assume maximum annual payment increase each year. Actual Results may vary. May affect amortization schedule. Interest rates will change. Consult your regulation Z.

This is not an offer to lend. Equal Opportunity Lender. For illustration purposes only.

MAKING YOUR MORTGAGE WORK FOR YOU !

TRANS AMERICAN FINANCIAL

DIRECT LENDER

1-888-509-4954

EQUAL OPPORTUNITY LENDER

# EXHIBIT E

(Page 3 of 6)

05-17-04 02:21PM FROM-World SVGS L085 Sacramento LC Mikee 065 T-807 P 007/013 F-076

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must be provided (and the appropriate box checked) when [X] the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

Mortgage Applied for: [ ] VA [ ] Conventional [X] Other: [ ] FHA [ ] FmHA

Agency Case Number:

Lender Case Number: BUICK

| Amount | Interest Rate | No. of Months | Amortization Type: |
|---|---|---|---|
| $ 216,000 | 1.950 % | 360 | [ ] Fixed Rate [X] Other (explain): [ ] GPM [ ] ARM (type): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, ZIP): 181 porter lane, auburn, CA 95602

No. of Units: 1

Legal Description of Subject Property (attach description, if necessary): apn:053-020-068

Year Built: 1955

Purpose of Loan: [ ] Purchase [ ] Construction [X] Other (explain): [ ] Refinance [ ] Construction-Permanent

Property will be: [X] Primary Residence [ ] Secondary Residence [ ] Investment

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements [ ] made [ ] to be made |
|---|---|---|---|---|
| 1994 | $ 145,000 | $ 175,000 | Cash-out / Home Improveme | Cost: $ |

Title will be held in what Name(s): elmer buick kathy buick

Manner in which Title will be held: Husband and Wife

Estate will be held in: [X] Fee Simple [ ] Leasehold (show expiration date)

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain):

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | elmer buick | kathy buick |
| Social Security Number | [redacted] | [redacted] |
| Home Phone (incl. area code) | (530) 878-7331 | (530) 878-7331 |
| Age | 66 | 47 |
| Yrs. School | 16 | 16 |
| Marital status | [X] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | [X] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated |
| Dependents | no.: ages: | no.: ages: |
| Present Address (street, city, state, ZIP) | [X] Own [ ] Rent ___ No. Yrs. 181 porter lane Auburn, CA 95602 | [X] Own [ ] Rent ___ No. Yrs. 181 porter lane Auburn, CA 95602 |

If residing at present address for less than two years, complete the following:

| Borrower | Co-Borrower |
|---|---|
| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. |
| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. |

### IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | [ ] Self Employed eskaton 8550 barton road granite bay, calif. 957 48 48 | [ ] Self Employed loomis medical center 6135 king road loomis ca |
| Yrs. on this job | 1 | 4 mos |
| Yrs. employed in this line of work/profession | 23 | 25 |
| Position/Title/Type of Business | maint/supv. | ins. billing clerk |
| Business Phone (incl. area code) | (916) 789-0326 | (916) 652-0428 |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| | Borrower | Co-Borrower |
|---|---|---|
| Name & Address of Employer | [ ] Self Employed Regency Health Care Roseville, Calf. | [ ] Self Employed Roseville Cordology Two medical Plaza Suite 175 Roseville CA. |
| Dates (from - to) | Nov 1998 April 2003 | 3-2000 5-1-2003 |
| Monthly Income | $ 3000.00 | $ 3000.00 |
| Position/Title/Type of Business | maint/Supv | ins Billing Clerk |
| Business Phone (incl. area code) | 7867200 | (916) 782 1246 |
| Name & Address of Employer | [ ] Self Employed | [ ] Self Employed |
| Dates (from-to) | | |
| Monthly Income | $ | $ |
| Position/Title/Type of Business | | |
| Business Phone (incl. area code) | | |

Same field — Same: field

Borrower's Signature: x Elmer Buick Date: 5/11

Co-Borrower's Signature: x Kathy Buick 5/11/04 Date:

Freddie Mac Form 65 10/92 Fannie Mae Form 1003 10/92

Pipeline Solutions (800) 787-8843 / PA020111 / 5-91