1  CONSUMER LAW OFFICE OF MARIE NOEL APPEL
   Marie Noel Appel (SBN 187483)
2  44 Montgomery Street, Suite 3830
   San Francisco, California 94104
3  Tel. (415) 901-0508
   Fax. (415) 901-0504
4  marie@consumerlaw.ws

5  (Additional Counsel Listed on Signature Page)

6  Attorneys for Plaintiffs
   Elmer and Kathy Buick

7

8  ## UNITED STATES DISTRICT COURT
   ## FOR THE EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| ELMER and KATHY BUICK | **Case No:** 2:07-CV-01447-MCE-KJM |
| Plaintiffs, | **SECOND AMENDED COMPLAINT FOR DAMAGES UNDER TRUTH IN LENDING ACT (15 U.S.C. §1601 *et. seq.*), UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code §17200 *et seq.*), FRAUD, NEGLIGENT MISREPRESENTATION AND BREACH OF FIDUCIARY DUTY** |
| vs. | |
| WORLD SAVINGS BANK, TRANSAMERICAN FINANCIAL CORPORATION, | |
| Defendants. | Action Filed: May 15, 2007 Trial Date: None Set |
| | JURY TRIAL DEMAND |

19

20                    **INTRODUCTION**

21        1        Plaintiffs Elmer and Kathy Buick seek damages and related relief pursuant to 15

22  U.S.C. §1640 based on Defendant World Savings Bank's failure to honor Plaintiffs' rescission

23  request pursuant to 15 U.S.C. § 1635.  Plaintiffs also charge defendants with the following

24  violations of California law: unfair business practices in violation of Cal. Bus & Prof. Code §§

25  17200 *et seq.*, fraud, negligent misrepresentation and breach of fiduciary duty.

26                    **JURISDICTION AND VENUE**

27        2.        This Court has jurisdiction pursuant to Title 28 of the United States Code,

28  Sections 1331 and 1337 because plaintiffs' claims under the Truth in Lending Act arise under

1    federal law. This Court has supplemental jurisdiction over plaintiffs' claims under state law

2    pursuant to the Judicial Improvements Act of 1990, Pub.L.No. 101-650, 104 Stat. 5089, 28

3    U.S.C. §1367.

4          3.    Venue is proper in this district pursuant to 28 U.S.C. §1391(c) because the

5    defendants do business in this district and plaintiffs' claims arose here.

6    **PARTIES**

7          4.    Defendant World Savings Bank is a mortgage lender that does business in this

8    district, among other places. Defendant World Savings ("World Savings") originated, owned

9    and serviced plaintiffs' mortgage.

10          5.    Defendant Transamerican Financial Corporation ("Transamerican") is a

11    mortgage broker that does business in this district, among other places. Defendant

12    Transamerican acted as plaintiffs' mortgage broker in the challenged transaction.

13          6.    Plaintiffs Elmer and Kathy Buick, husband and wife, are residents of Auburn,

14    California.

15          7.    Plaintiffs are informed and believe that, at all times herein mentioned, each

16    defendant was the agent, co-conspirator, joint tortfeasor, joint venturer, and/or alter ego of each

17    other defendant. In doing the things alleged herein, each defendant was acting within the course

18    and scope of said agency, conspiracy, contract, and/or joint venture with the direction, advance

19    knowledge, authorization, acquiescence, and/or subsequent ratification of each and every

20    remaining defendant. Each defendant was put in a position and so enabled by the remaining

21    defendant to do the things hereinafter alleged. Each defendant had the knowledge of and agreed to

22    the objective and course of action hereinafter alleged, and each defendant conspired with and

23    aided and abetted each other defendant in achieving that objective and pursuing that course of

24    action.

25          8.    Whenever reference is made in this complaint to any act, deed or transaction of

26    any defendant corporation, or any other defendant business entity, such allegations shall be

27    deemed to mean that the officers, directors, agents or employees of said defendant authorized,

28    acted and did such acts in behalf of said defendant while actively engaged in the management,

---

1 | direction or control of its affairs and while acting within the course and scope of their

2 | employment.

3 |      9.     Whenever reference is made in this complaint to any act of any defendant, such

4 | allegation shall be deemed to mean the act of each defendant, acting individually, jointly and

5 | severally.

6 |      10.    At all times relevant herein, defendants, and each of them, were the agents of

7 | each of the other defendants and in doing the things alleged herein were acting within the

8 | course and scope of said agency.

9 | **BACKGROUND**

10 |      11.    In 2004, defendant World Savings marketed a mortgage known as the Pick-a-

11 | Payment$^{SM}$ Equity Builder$^{SM}$ loan. The Equity Builder$^{SM}$ loan has a low initial teaser rate that

12 | expires after 3 months.

13 |      12.    Although the loan is named Equity Builder$^{SM}$ and marketed as such, in fact, this

14 | type of loan is more likely to reduce the home owner's equity than increase it. A distinctive

15 | feature of this loan product is that the required minimum payments on the loan can increase

16 | more slowly than the interest rate. This means that if the customer makes the required

17 | minimum payments, the principal of the loan may increase, a condition known as negative

18 | amortization.

19 |      13.    Perhaps because negative amortization is a negative from a marketing

20 | standpoint, the words "Equity Builder" were included in the name of the mortgage product in

21 | order to convey the misleading impression that the loan product would help homeowners build

22 | up, rather than reduce, the equity in their homes. Thus, calling the loan the Equity Builder$^{SM}$ is

23 | false and misleading.

24 |      14.    World Savings knew or should have known that brokers marketing its Pick-a-

25 | Payment$^{SM}$ Equity Builder$^{SM}$ loan would focus on the low initial teaser interest rate and would

26 | minimize both the higher escalating interest rates that would be in effect for the entire life of

27 | the loan after the initial 3 months and the fact that the principal may increase. In addition,

28 | World Savings knew, or should have known, that the name, Equity Builder$^{SM}$ was misleading,

1    conflicted with the other disclosures and confused customers, including plaintiffs, as to the true

2    nature of the Pick-a-Payment[SM] Equity Builder[SM] loan.

3         15.    Moreover, World Savings itself provides customers with documents that

4    reference the low initial teaser rate without explaining that it will increase greatly after 3

5    months.  See Underwriting Statement attached as Exhibit A hereto.

6         16.    World Savings marketed its loan products, including the Pick-a-Payment[SM]

7    Equity Builder[SM] loan, through a variety of agents.  One of those agents was Dirk

8    Kuivenhoven, also known as Dirk Johnson, also known as Mark Rawlings.  In 2000, Mr.

9    Kuivenhoven filed for bankruptcy but his petition was dismissed because he provided false

10   information to the bankruptcy court.  See Docket Report and Complaint Objecting to Discharge

11   for U.S. Bankruptcy Case No. 00-23277-C-7 (CAED) attached as Exhibit B hereto.

12        17.    Plaintiffs are informed and believe that, in 2004, Mr. Kuivenhoven was, and

13   possibly still is, a licensed California mortgage broker.  In 2004, Mr. Kuivenhoven was the

14   Sacramento branch manager of defendant Transamerican Financial Corporation.

15        18.    World Savings paid Mr. Kuivenhoven to market its loans pursuant to a contract

16   which gave World Savings the right to control who he could market to and what Mr.

17   Kuivenhoven could say about the World Savings loan products he sold.  The agreement

18   between World Savings and Mr. Kuivenhoven also prohibited Mr. Kuivenhoven from

19   disclosing to customers his affiliation and agency relationship with World Savings.  See

20   engagement letter from World Savings to Mr. Kuivenhoven attached as Exhibit C hereto.

21        19.    In March 2004, Mr. Kuivenhoven, using his alias Dirk Johnson and using the

22   letterhead of Direct Lenders (apparently an alias for Transamerican), sent a letter to plaintiffs

23   offering to reduce their mortgage payments by as much as $1,035 per month by getting them a

24   new mortgage with an interest rate of 3.5%.  The letter told plaintiffs:

25        Here's what you can expect from me:

26        1.    I handle all of the details from your first call to closing.
27        2.    I keep you up to date and well informed as we walk thru the
              process.
28        3.    I make sure you get the best rate and loan possible.

4.    I give you honest straight forward information.

See Exhibit D hereto.

20.    Mr. Kuivenhoven met with plaintiffs, told them he would get them an Equity Builder$^{SM}$ loan with an initial interest rate of 1.95% and that their loan balance would decrease if they made the required minimum payments. See Exhibit E hereto.

21.    Mr. Kuivenhoven assured plaintiffs they could convert the mortgage into a fixed rate loan simply by contacting World Savings and asking to lock in a rate. Mr. Kuivenhoven gave another document to plaintiffs which showed them that over the course of five years they would pay $22,038 less with the loan product he was offering than they would with a traditional 30 year fixed rate mortgage with an interest rate of 6.5%. See Exhibit F hereto. A third document which Mr. Kuivenhoven gave to plaintiffs showed them that, over the course of 30 years, their mortgage interest rate would never exceed 4.798% and that with bi-weekly payments that began at $396 and peaked at $616 in the eighth year of the mortgage, they would be able to pay off the mortgage in 25 years. See Exhibit G hereto.

22.    In early May of 2004, Mr. Kuivenhoven prepared a World Savings loan application for plaintiffs which shows a mortgage interest rate of 1.95% and does not disclose that the loan was an adjustable rate mortgage; the "Other" box is checked for the type of loan but no explanation or details are included in the adjacent space provided for that purpose. See Exhibit H hereto.

23.    The closing took place on June 10, 2004. World Savings provided Plaintiffs with a copy of their loan application and the Uniform Underwriting and Transmittal Summary which both show the interest rate on the loan as 1.95%. See Exhibits A and H hereto.

24.    Plaintiffs received only 3 copies of the Notice of Right to Cancel which incorrectly state the last date to rescind as June 15, 2005. See Exhibit I hereto.

25.    Plaintiffs trusted, believed and reasonably relied upon Mr. Kuivenhoven's representations about the World Savings Equity Builder loan. They decided to refinance their mortgage with World Savings. At the closing in June 2004, they signed the loan papers without reading them, assuming that they were consistent with what Mr. Kuivenhoven had told them.

---

SECOND AMENDED COMPLAINT

1

2    26.    Plaintiffs' confidence in Mr. Kuivenhoven, World Savings and Transamerican

3  Financial was misplaced.  The loan terms were not as promised and represented.  Instead, there

4  was a bait and switch.  While plaintiffs' loan starts with an initial interest rate of 1.95 %, it

5  adjusts upwards within two months of the closing and can go as high as 11.950%.  When this

6  action was commenced, the interest rate on plaintiffs' loan was approximately 9.033%.  This is

7  a much higher interest rate than plaintiffs had before their deal with World Savings.  The loan

8  terms are also far worse for plaintiffs than the deal they were promised and far worse than they

9  could have gotten (since their credit scores were over 700) in a fair market transaction.

10    27.    In exchange for getting plaintiffs to sign the loan papers, World Savings paid

11  Mr. Kuivenhoven and/or Transamerican Financial $4,320, which was over and above the

12  amount that Mr. Kuivenhoven and Transamerican charged plaintiffs for acting as their broker.

13  *See* Settlement Statement attached as Exhibit J hereto.

**TRUTH IN LENDING ACT - REGULATORY FRAMEWORK**

15    28.    The Truth in Lending Act ("TILA"), 15 U.S.C. §1601 *et seq.* requires the clear,

16  fair, conspicuous and accurate disclosure of the costs and terms of credit.  The statute's purpose

17  is to protect consumers from inaccurate and unfair credit practices, and to assure a meaningful

18  disclosure of credit terms so that the consumers will be able to compare more readily the

19  various credit terms available to them and avoid the uninformed use of credit.

20    29.    Accordingly, the Board of Governors of the Federal Reserve System

21  promulgated Regulation Z to implement the TILA. 12 C.F.R. §226.1(a).  A creditor is required

22  by Regulation Z to make certain disclosures to the consumer, "clearly and conspicuously in

23  writing, in a form that the consumer may keep."  12 C.F.R. §226.17(a)(1).  Regulation Z sets

24  out certain guidelines for creditors to follow when disclosing the amount financed, the finance

25  charge, and the annual percentage rate to the consumer and demands that these disclosures be

26  accurate. 12 C.F.R. §§226.18, 226.22, 226.5

27    30.    Where a loan may result in negative amortization, 12 C.F.R. §226.19 requires

28  special additional disclosures:  According to the FRB Commentary:

---

> If a consumer is given the option to cap monthly payments that may result in
> negative amortization the creditor must fully disclose ... the effects of
> exercising the option (such as negative amortization will occur and the principal
> loan balance will increase ....

FRB Commentary to 12 C.F.R. §226.19(b)(2)(vii).

31.    Regulation Z also requires that "disclosures shall reflect the terms of the legal obligation between the parties" 12 C.F.R. §226.17(c)(1) and that the creditor accurately disclose "[t]he number, amounts, and timing of payments scheduled to repay the obligation." 12 C.F.R. §226.18(g)(1).

32.    The Truth in Lending Act confers additional rights on home owners who refinance their mortgages with a new lender. In order to give these borrowers an opportunity to reflect on their other TILA disclosures and to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three business days after receiving their final TILA disclosures or three business days of receiving notice of their right to rescind, whichever is later. More specifically, the statute provides that:

> Except as otherwise provided in this section, in the case of any consumer credit
> transaction ... in which a security interest ... is or will be retained or acquired in
> any property which is used as the principal dwelling of the person to whom
> credit is extended, the obligor shall have the right to rescind the transaction until
> midnight of the third business day following the consummation of the
> transaction or the delivery of the information and rescission forms required
> under this section together with a statement containing the material disclosures
> required under this title, whichever is later, by notifying the creditor, in
> accordance with regulations of the Board, of his intention to do so.

15 U.S.C. §1635(a).

33.    To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not
> liable for any finance or other charge, and any security interest given by the

> obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. §1635(b).

34.     To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

15 U.S.C. §1635(a).

35.     Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. Subject to exceptions not here pertinent, the regulation provides:

> In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ....

12 C.F.R. §226.23(a)(1).

36.     The regulation goes on to require that the creditor "deliver" to "each consumer entitled to rescind" two copies of a document that "clearly and conspicuously disclose[]" the consumer's rescission rights. See 12 C.F.R. §226.23(b)(1).

37.     More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in §226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission, as described in paragraph (d) of this section.

(v) The date the rescission period expires.

12 C.F.R. §226.23(b)(1).

38.     Paragraph (d) goes on to explain the effects of rescission. Subparagraph (d)(1) provides:

When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

12 C.F.R. §226.23(d)(1).

39.     Subparagraph (d)(2) states:

Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

12 C.F.R. §226.23(d)(2).

\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\
\\\

SECOND AMENDED COMPLAINT

## COUNT ONE -- TRUTH IN LENDING ACT
### FAILURE TO HONOR NOTICE OF RESCISSION - 15 U.S.C. § 1635

40.     Plaintiffs incorporate paragraphs 1 through 39 above as though set forth in full herein and further allege as follows.

41.     World Savings did not provide plaintiffs with the proper rescission notice and Truth in Lending disclosures.  The disclosures were defective in the five ways set forth below.

42.     The Notice of Right to Cancel forms that were given to the Buicks at the closing were defective in that they misstate the date on which the rescission period expires, in violation of 12 C.F.R. §226.23(b)(1)(v).  The notice stated the rescission period expired on June 15, 2004 when, in fact, the rescission period expired on June 14, 2004.

43.     World Savings did not give plaintiffs the proper number of copies of their Notice of Right to Cancel forms in violation of 12 C.F.R. §226.23(b)(1).  Plaintiffs were provided only 3 copies of the Notice of Right to Rescind rather than the 4 copies required (2 copies for each borrower).

44.     By labeling the loan the Equity Builder$^{SM}$, World Savings masked and overshadowed the existence and consequences of negative amortization, in violation of 12 C.F.R. § 226.19.

45.     World Savings also misled plaintiffs as to the cost of credit in violation of 12 C.F.R. §226.18 by providing plaintiffs a document making it appear that the interest rate on the loan would be 1.95% when, in fact, the 1.95% would be in effect for only the first 3 months and that after that time period had expired, the interest rate would increase dramatically.

46.     World Savings also misled plaintiffs as to the cost of credit in violation of 12 C.F.R. §226.18 through the representations by Kuivenhoven and Transamerican who were acting as World Savings' agents, co-venturers and/or coconspirators.

47.     Under the Truth in Lending Act, if the rescission disclosures or material TILA disclosures are deficient, then the rescission period is extended for up to three years.  See 12 C.F.R. §226.23(a)(3) ("If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's

1  interest in the property, or upon sale of the property, whichever occurs first").

2    48. World Savings' rescission and material TILA disclosures were defective.

3  Accordingly, plaintiffs were entitled to rescission and sent a timely rescission notice to World

4  Savings on May 7, 2007.

5    49. Within twenty days of receiving the rescission notice sent by plaintiffs on May

6  7, 2007, defendant World Savings should have released its security interest in plaintiffs' loan

7  and paid back to plaintiffs any money or property that plaintiffs paid to it in connection with

8  the loan. See 12 C.F.R. §226.23(d)(2). Defendant World Savings has not done so.

9    50. Defendant's failure to honor the rescission request is a violation of the Truth in

10  Lending Act 15 U.S.C. § 1640. Plaintiffs are entitled to actual plus statutory damages and

11  other relief.

12    WHEREFORE, plaintiffs pray for relief as set forth hereinafter.

13      **COUNT TWO -- VIOLATION OF CALIFORNIA LAW**

14    **UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code §§ 17200 et seq.)**

15    51. Plaintiffs incorporate paragraphs 1 through 39 above as though set forth in full

16  herein and further allege as follows.

17    52. As described above, defendants have committed acts of unfair competition,

18  proscribed by Business and Professions Code section 17200, *et seq.*, including, but not limited

19  to, the following:

20      a. Representing that the loan obtained by plaintiffs, the "Equity Builder,"

21       would build the equity in plaintiffs' home faster than other loans and, in

22       doing so misled plaintiffs as to the potential for and consequences of

23       negative amortization;

24      b. Representing that the interest rate on plaintiffs' mortgage would never

25       exceed 4.798% when such representations were false;

26      c. Representing that the initial interest rate on plaintiff' mortgage would be

27       1.95% and that the interest rate on the loan would never exceed 4.798% and,

28       by doing so, misleading plaintiffs as to the cost of credit;

    d.  Representing to plaintiffs that they would be able to switch to a fixed rate loan at no cost when in fact the loan provided for a substantial prepayment penalty during the first three years;

    e.  Representing to plaintiffs that Kuivenhoven and Transamerican were working for plaintiffs and were loyal to their best interests when, in fact, Kuivenhoven and Transamerican were employed by an adverse party;

    f.  Representing to plaintiffs that they would be given the best possible loan terms and that their mortgage interest rate would start at 1.95% and never exceed 4.798%;

    g.  By engaging in a bait and switch by baiting plaintiffs into the mortgage transaction by offering a relatively favorable set of terms and then switching to less favorable terms;

    h.  By violating Business & Professions Code § 17500 *et seq.* as set forth in paragraphs 11 through 25 herein.

53.    As a result of defendants' unfair, unlawful and/or deceptive acts, plaintiffs have been damaged as set forth herein.

WHEREFORE, plaintiffs pray for relief as set forth hereinafter.

## COUNT THREE -- VIOLATION OF CALIFORNIA LAW
### FRAUD

54.    Plaintiffs incorporate paragraphs 1 through 39 above as though set forth in full herein and further allege as follows.

55.    Defendants made the representations described in paragraphs 11 through 27 of this complaint.

56.    Defendants' representations were willful and fraudulent in that defendants knew that plaintiffs would rely on their representations. Defendants made such untrue and misleading representations with the purpose of inducing plaintiffs to enter into a loan transaction with defendants and for the purpose of collecting from plaintiffs, payment for goods and services. The misrepresentations were of material facts concerning plaintiffs' decision to

1  enter into the loan transaction.

2       57.    The representations by defendants were false.  Defendants made the

3  representations knowing they were false, or with reckless disregard of whether they were true

4  or false.

5       58.    Defendants made the false representations with intent to defraud plaintiffs.

6       59.    Plaintiffs did not know the representations were false.

7       60.    Plaintiffs acted in justifiable reliance on the false representations by defendants

8  and suffered damage because the representations were false.

9       61.    The intentional misrepresentations by defendants involved oppression, fraud or

10  malice, thereby entitling plaintiffs to recover punitive damages.

11       WHEREFORE, plaintiffs pray for relief as set forth hereinafter.

12  <strong>COUNT FOUR -- VIOLATION OF CALIFORNIA LAW</strong>
13  <strong>NEGLIGENT MISREPRESENTATION</strong>

14       62.    Plaintiffs incorporate paragraphs 1 through 39 above as though set forth in full

15  herein and further allege as follows.

16       63.    Defendants made the representations described in paragraphs 11 through 27 of

17  this complaint.

18       64.    Defendants' representations were negligent in that defendants knew, or should

19  have known, that plaintiffs would believe and rely upon defendants' representations.

20       65.    Defendants made such untrue and misleading representations with the purpose

21  of inducing plaintiffs to enter into a loan transaction with defendants and for the purpose of

22  collecting from plaintiffs, payment for goods and services.  The misrepresentations were of

23  material facts concerning plaintiffs' decision to enter into the loan transaction.

24       66.    The representations by defendants were false.  Defendants made the

25  representations without any reasonable ground for believing them to be true.

26       67.    Defendants made the false representations with intent to defraud plaintiffs.

27       68.    Plaintiffs did not know the representations were false.

28       69.    Plaintiffs acted in justifiable reliance on the false representations by defendants

1  and suffered damage because the representations were false.

2       WHEREFORE, plaintiffs pray for relief as set forth hereinafter.

3                    **COUNT FIVE -- VIOLATION OF CALIFORNIA LAW**
4                          **BREACH OF FIDUCIARY DUTY**

5       70.     Plaintiffs incorporate paragraphs 1 through 39 above as though set forth in full

6  herein and further allege as follows.

7       71.     Kuivenhoven and Transamerican were plaintiffs' mortgage broker acting on

8  behalf of plaintiffs for the purposes of obtaining for them a loan secured by their residence.

9  Accordingly, Kuivenhoven and Transamerican owed plaintiffs a duty to act with the utmost

10  good faith and in plaintiffs' best interests.

11       72.     Kuivenhoven and Transamerican knowingly acted against plaintiffs' best

12  interests and instead acted on behalf of World Savings whose interests were adverse to

13  plaintiffs.  Kuivenhoven and Transamerican knowingly failed to disclose to Plaintiffs their

14  conflict of interest.

15       73.     Plaintiffs did not give informed consent to defendants' conduct.

16       74.     World Savings knowingly participated in and induced Kuivenhoven's and

17  Transamerican's breach of fiduciary duty.  In addition, World Savings conspired with and

18  knowingly aided and abetted with Kuivenhoven and Transamerican in the breach of the

19  fiduciary duty owed to plaintiffs.  Therefore, World Savings is jointly responsible for the

20  breach.

21       75.     As a result of defendants' conduct, plaintiffs suffered damage.

22       76.     Defendants' conduct was a substantial factor in causing the damage to

23  plaintiffs'.

24       WHEREFORE, plaintiffs pray for relief as set forth hereinafter.

25  \\\

26  \\\

27  \\\

28  \\\

SECOND AMENDED COMPLAINT

# PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court grant judgment against defendants as follows:

a) Ordering defendant World Savings to pay to plaintiffs what they would have received under 12 C.F.R. §226.23(d)(2) had World Savings complied with the law and honored Plaintiffs' request for rescission;

b) Awarding restitution to plaintiffs resulting from defendants' unfair business practices, of all monies collected by defendants as a result of the practices alleged above, together with interest thereon from the date of payment;

c) Awarding plaintiffs actual and punitive damages;

d) Awarding appropriate statutory damages and penalties;

e) Awarding attorneys' fees and costs of suit;

f) Granting such other and further relief as the Court deems just and proper.

Respectfully submitted:

Marie Noel Appel, Attorneys for Plaintiffs
ELMER AND KATHY BUICK

Consumer Law Office of Marie Noel Appel
44 Montgomery Street, Suite 3830
San Francisco, California 94104
(415) 901-0508

OF COUNSEL:

Daniel Harris, Esq.
Anthony Valach, Esq.
The Law Offices of Daniel Harris
150 N. Wacker Drive, Suite 3000
Chicago, IL 60606
P: (312) 960-1802
F: (312) 960-1936
lawofficedh@yahoo.com

# EXHIBIT A

(Page 1 of 6)

05-17-04    02:20PM    FROM-World SVGS LOGS Sacramento LC Mikee    065    T-907    P 005/013    F-078

# Uniform Underwriting and Transmittal Summary

## I. Borrower and Property Information

| | | |
|---|---|---|
| Borrower Name | elmer buick | SSN: 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 |
| Co-Borrower Name | kathy buick | SSN: 48-37-2481 |
| Property Address | 181 porter lane, auburn, CA 95602 | |

**Property Type**

- [X] Detached Housing
- [ ] Attached Housing
- [ ] Condominium
- [ ] PUD
- [ ] CO-OP

**Project Classification**

- [ ] A/III Condo
- [ ] B/II Condo
- [ ] C/I Condo
- [ ] E PUD
- [ ] F PUD
- [ ] III PUD
- [ ] I CO-OP
- [ ] 2 CO-OP

Project Name

**Occupancy Status**

- [X] Primary Residence
- [ ] Second Home
- [ ] Investment Property

Number of Units **1**
Sales Price $
Appraised Value $ **350,000.00**

## II. Mortgage Information

**Loan type**

- [ ] Conventional
- [ ] FHA
- [ ] V.A.
- [ ] FmHA
- [X] Other (specify)

**Amortization Type**

- [ ] Fixed-Rate - Monthly Payments
- [ ] Fixed-Rate - Bi-Weekly Payments
- [ ] Balloon
- [ ] ARM (type)

**Loan Purpose Type**

- [ ] Purchase
- [X] Cash-Out Refinance
- [ ] No Cash-Out Refinance

Purpose of Refinance:
**Cash-out / Home Improveme**

**Lien Position**

- [X] First Mortgage
- [ ] Second Mortgage

Amount of Subordinate Financing $

**Note Information**

| | | |
|---|---|---|
| Original Loan Amount | $ | 216,000.00 |
| Initial P&I Payment | $ | 792.99 |
| Initial Note Rate | | 1.950 % |
| Note Date | | |
| Term (in months) | | 360 |

**Mortgage Originator**
- [X] Seller
- [ ] Third Party

Third Party Name

**Buydown**
- [ ] Yes
- [X] No

**If Second Mortgage**
Owner of First Mortgage
- [ ] Fannie Mae
- [ ] Freddie Mac
- [ ] Seller/Other

Original Loan Amount of First Mortgage

## III. Underwriting Information

| Underwriter's Name | Appraiser's Name/License # | Appraisal Company Name |
|---|---|---|

**Stable Monthly Income**

| | Borrower | Co-Borrower | Total |
|---|---|---|---|
| Base Income | $ 3,000.00 | $ 3,500.00 | $ 6,500.00 |
| Other Income | $ 1,131.00 | $ | $ 1,131.00 |
| Positive Cash Flow | $ | | |
| (Subject Property) | $ | $ | |
| Total Income | $ 4,131.00 | $ 3,500.00 | $ 7,631.00 |

**Qualifying Ratios**

| | |
|---|---|
| Primary Housing Expense/Income | 12.75 % |
| Total Obligations/Income | 12.75 % |

**Loan-to-Value Ratios**

| | |
|---|---|
| LTV | 61.71 % |
| Total LTV | 61.71 % |

**Qualifying Rate**

- [X] Note Rate **1.950** %
- [ ] ____% Above Note Rate ____%
- [ ] ____% Below Note Rate ____%
- [ ] Bought Down Rate ____%
- [ ] Other ____%

**Proposed Monthly Payments**

Borrower's Primary Residence:

| | | |
|---|---|---|
| First Mortgage P&I | 1.950% | $ 792.99 |
| Second Mortgage P&I | | $ |
| Hazard Insurance | | $ 50.00 |
| Taxes | | $ 130.00 |
| Mortgage Insurance | | $ |
| Homeowners Association Fees | | $ |
| Lease/Ground Rent | | $ |
| Other | | $ |
| Total Primary Housing Expense | | $ 972.99 |
| Other Obligations | | |
| Negative Cash Flow | | $ |
| (subject property) | | |
| All Other Monthly Payments | | $ |
| Total All Monthly Payments | | $ 972.99 |

Underwriter Comments (if more space is needed, use page two)

## IV. Seller, Contract, and Contact Information

| | |
|---|---|
| Seller Name | Contact Name |
| Seller Address | Contact Title |
| | Contact's Phone Number |
| Seller No _____ Investor Loan No. _____ | |
| Seller Loan No. | Contact's Signature |
| Master Commitment No. | Date |
| Contract No. | Type of Commitment [ ] Standard [ ] Negotiated |

## V. Delivery Data
(Completion of this section is optional; however the data must be transmitted on the applicable Fannie Mae or Freddie Mac delivery form when the mortgage is delivered for sale.) (See FNMA 1008A/FHLMC 1077A for a list of valid codes.)

**Borrower Information**

| | |
|---|---|
| Number of Borrowers | |
| Borrower Age | 66 |
| Co-Borrower Age | 47 |
| Are any of the occupant borrowers first-time homebuyers? | [ ] Yes [X] No |

**Property Information**

| Number of Bedrooms | Gross Monthly Rents | Year Built 1955 |
|---|---|---|
| Unit 1 | Unit 1 $ | |
| Unit 2 | Unit 2 $ | |
| Unit 3 | Unit 3 $ | |
| Unit 4 | Unit 4 $ | |

**Information for Government Monitoring Purposes Only**

Borrower Race Code **3**    Borrower Gender Code **1**    Co-Borrower Race Code **5**    Co-Borrower Gender Code **2**

**Mortgage Insurance**

| | | |
|---|---|---|
| Mortgage Insurer (MI) Code | Percentage of Coverage ____% | |
| Certificate Number | Adjustor Coverage [ ] Yes [ ] No | |

**Special Feature/Characteristic Codes**

Code 1 ____ Code 3 ____ Code 5 ____
Code 2 ____ Code 4 ____ Code 6 ____

Freddie Mac Form 1077 11/92
Fannie Mae Form 1008 11/92

05-17-04   02:21PM   FROM-World SVGS LOGS Sacramento LC Mikee        085                T-907  P 008/013  F-076

## VI. Additional Delivery Data

(Completion of this section is optional; however, the data must be transmitted on the applicable Fannie Mae or Freddie Mac delivery form when the mortgage is delivered for sale.) (See FNMA 1008A/FHLMC 1077A for a list of valid codes.)

### A. All Mortgages

**Loan Information**

First P&I Payment Date ___07/01/2004___

Current UPB $ _____

**Fannie Mae Only**

Assumable ☐ Yes ☐ No

Interest Only ☐ Yes ☐ No

Interest Only End Date _____

FHA/V.A. Section of Act _____

Original Term (in months) _____

Amortization Term (in months) _____

Maximum Term (in months) _____

Due Date of Last Paid Installment _____

**Freddie Mac Only**

Reduced Documentation ☐ Yes ☐ No

Loan Feature Code _____

Interest Paid-To-Date _____

Note Maturity Date _____

### B. Adjustable Rate Mortgages (ARMs)

**Loan Information**

Current Interest Rate _____ %

Current P&I Payment $ _____

First Rate Change Date _____

Mortgage Margin _____ %

Maximum Interest Rate _____ %

Minimum Interest Rate _____

**Fannie Mae Only**

First Payment Change Date _____

Original Index Value _____ %

Lookback (in days) _____

Rounding Feature Code _____

☐ 027 (1/8%)

_____ (negotiated commitment codes)

**Freddie Mac Only**

Next Rate Adjustment Date _____

Next Payment Adjustment Date _____

Is ARM Convertible? ☐ Yes ☐ No

Net Negative Amortization $ _____

Periodic Interest Rate Cap ☐ Yes ☐ No

Rate Cap Percent _____ %

Payment Cap ☐ Yes ☐ No

Payment Cap ☐ Opt ☐ Man

Payment Cap Percent _____ %

Rate Rounded ☐ Yes ☐ No

Percent Rounded By _____ %

### C. Other Mortgage Programs

**Fannie Mae Only**

For Growing Equity Mortgages (GEMs):

Percent of Increase _____ %

For Balloon Mortgages:

Balloon Call Date _____

**Freddie Mac Only**

For Graduated-Payment Mortgages (GPMs):

Yearly Payment Increase _____ %

For EQUAL$_{TM}$ and Tiered Payment Mortgages (TPMs):

Borrower's First Payment Change Date _____

Borrower's Initial P&I Payment $ _____

Yearly Payment Increase _____ %

**For Affordable Housing Initiatives Program Mortgages:**

| Down Payment | | Closing Costs | | Secondary Financing | |
|---|---|---|---|---|---|
| Source Codes | Amounts | Source Codes | Amounts | Source Codes | Amounts |
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | _____ | $ _____ |
| _____ | $ _____ | _____ | $ _____ | | |

**Borrower Education Counseling Codes**

| Administrator Codes | Format Codes |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

## VII. Additional Underwriter Comments

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

## VIII. For Seller Use

# EXHIBIT B

## U.S. Bankruptcy Court
### Eastern District of California (Sacramento)
### Bankruptcy Petition #: 00-23277

*Assigned to:* Judge Christopher M. Klein
Chapter 7
Previous chapter 13
Voluntary
Asset

*Date Filed:* 03/21/2000
*Date Converted:* 04/02/2002

*Debtor*
**Dirk J. Kuivenhoven**
PO Box 272
Penryn, CA 95663-0272
( )
SSN: xxx-xx-1375
*aka*
**Dirk J. Kuivenhoven**
8350 Duffers Dr
Penryn, CA 95663
*aka*
**Mark D. Rawlings**
160 BERRY CREEK CT
FOLSOM, CA 95630
( )
SSN: xxx-xx-7594

represented by **Al J. Patrick**
701 High St #207
Auburn, CA 95603
(530) 823-8372

*Trustee*
**Richard J. Hanf**
PO Box 6499
Napa, CA 94581
(707) 251-0610

represented by **Victoria C. Baker**
1830 15th St
Sacramento, CA 95814
(916) 443-2051

*Trustee*
**Richard J. Hanf**
PO Box 6499
Napa, CA 94581
(707) 251-0610

represented by **Victoria C. Baker**
(See above for address)

*U.S. Trustee*
**Office of the U.S. Trustee**
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

| Filing Date | # | Docket Text |
| --- | --- | --- |
| 03/21/2000 | 1 | Voluntary Petition missing documents: Summary And Schedules A - J Statement of Financial Affairs Due on 4/5/00 ( Fee $ 00.00 Receipt # 0) auto (Entered: 03/22/2000) |

2

1

2  J. RUSSELL CUNNINGHAM, State Bar #130578
   MARC B. KOENIGSBERG, State Bar #204265
3  DESMOND, MILLER & DESMOND
   1006 Fourth Street, Tenth Floor
4  Sacramento, California 95814
   Telephone: (916) 443-2051
5  Facsimile: (916) 443-2651

6  Attorneys for Plaintiff,
   Chapter 7 Trustee Richard Hanf

7

8                    UNITED STATES BANKRUPTCY COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        SACRAMENTO DIVISION

11  In re:                              Case No.: 00-23277-C-7
                                        Chapter 7
12  Mark Rawlings,

13          Debtor.

14  _____

15  Richard Hanf,                       Adv. No.: _____

16          Plaintiff,

17  vs.

18  Dirk J. Kuivenhoven,

19          Defendant.

20

21              COMPLAINT OBJECTING TO DISCHARGE

22      Plaintiff Richard Hanf ("Trustee"), for his complaint, alleges:

23      1.      This case was commenced by the pro se filing of a voluntary Chapter 7 petition

24  on March 21, 2000 by Defendant Dirk J. Kuivenhoven ("Debtor"), an individual who from time to

25  time has used as an alias, among many others, the name Mark Rawlings.

26  ///

27  ///

28                                      1

Desmond,
Miller & Desmond
1006 Fourth Street
10ᵗʰ Floor
Sacramento, CA
95814
(916) 443-2051

00-2295-C
C. ADVERSARY
PLAINTIFF:  Richard Hanf
DEBTOR:  Mark Rawlings
DEFENDANT:  Dirk Kuivenhoven
JUDGE:  Hon. C. Klein

FILED 05/26/00 - 03:14 PM
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION      luis

RECEIPT NO: 2-0-011244    $150

00-23277

[P 2]

2.    The creditors identified in the creditor matrix filed with the petition consists of persons with whom Debtor has dealt under the alias Mark Rawlings.

3.    This is a complaint objecting to discharge pursuant to FRBP Rule 7001(4).

4.    This court has jurisdiction pursuant to 28 U.S.C. § 1334.

5.    Venue is proper pursuant to 28 U.S.C. § 1409(a).

6.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

7.    Debtor has engaged in the following conduct, all of which amount to independent grounds for the denial of discharge:

   a.    Presenting to the bankruptcy court two separate petitions that contained false and misleading material information regarding Debtor's true name and aliases, address, and Social Security number.

   b.    Failing to file schedules, a statement of financial affairs, and other pleadings required by the applicable law.

   c.    Failing to appear at 341 hearings.

   d.    Concealing assets with the intent to defraud.

   e.    Making false oaths regarding material matters.

**WHEREFORE**, Trustee respectfully prays for judgment denying Debtor's discharge pursuant to 11 U.S.C. § 727, costs of suit, and such other and further relief as the court deems proper.

DATED:  May 26, 2000                    **DESMOND, MILLER & DESMOND**

                                        By: _____
                                        J. Russell Cunningham,
                                        Attorneys for Plaintiff Richard Hanf,
                                        Chapter 7 Trustee

F:\Docs\BKR\Hanf\Rawlings\Pleadings\complaint.discharge.05.25.00.wpd

2

# EXHIBIT C

 *Fortune* named us "America's Most Admired" mortgage services company.

September 26, 2003

TRANSAMERICAN FINANCIAL CORPORATION
MR. DIRK KUIVENHOVEN
9968 HIBERT STREET, #104
SAN DIEGO, CA  92131

DEAR MR. DIRK KUIVENHOVEN:

Congratulations, this letter acknowledges your participation in World Savings Bank's Preferred Mortgage Broker Program. A Preferred Mortgage Broker has World Savings' approval to submit loan application packages to World Savings in accordance with its Preferred Mortgage Broker Program. A Preferred Mortgage Broker (PMB) may submit a loan application, containing the documents required by World Savings Bank, FSB to commence its loan approval process. The loan application should include the fully completed World Preferred Mortgage Broker Demand Statement for your area. When and if the PMB loan funds, World will deduct your fee, up to the limit described on the GF 403 form, from the loan amount and you will be paid directly from World.

Your Preferred Mortgage Broker number is 67486. You will need your number to access World rate sheet information. Call 1 (800) 645-2936 for 24 hour rate information. State codes required to access rate information are the same as the two letter postal abbreviations converted to numeric entries on your telephone key pad. For example, California (CA) is entered as '22.'

By participating in the Preferred Mortgage Broker program, you acknowledge and agree that.

1.  Either you or World may terminate your participation in the Preferred Mortgage Broker Program at any time and for any reason or for no reason. If World terminates your participation, it will do so in writing to the address to which this letter has been sent. If you change your address after you receive this letter you should notify the undersigned in writing at 1901 Harrison Street, Oakland, CA  94612.

2.  You are not authorized to represent yourself to anyone as an agent or employee of World Savings (b) directly solicit existing World Savings loan customers (c) use World Savings' name, logo, or letterhead in any advertising or customer solicitation without the prior written approval of the World Savings Division manager (Senior Vice President) for the area in which your office is located (d) advertise any World Savings' loan product or loan program without the prior written approval of the Division manager referenced above (e) change the name under which you operate your business to any name which includes the words 'World' or 'Golden West' without our express written consent (f) use your name in any manner likely to cause customers to confuse your business with that of World Savings or Golden West Financial Corporation

3.  You warrant that you are duly licensed and in good standing as a (mortgage broker) in the state of CA and you agree to comply with the laws of that state applicable to such licensees including laws applicable to your right to receive compensation. In the event you broker any loan to World Savings secured by real property in a state other than the state named above, you warrant that you are in compliance with applicable laws, including licensing laws, of such state

World Savings is an Equal Housing Lender. We comply with all applicable fair lending laws and we expect PMB's to share our commitment to fair lending

Welcome to World's Preferred Mortgage Broker Program!

Very truly yours,

*Dolores Reddicks-Luckett*

Dolores Reddicks-Luckett
Assistant Vice President




**WORLD SAVINGS**
*How may we help you?* ®

Member of $70 billion-strong Golden West Financial Corporation

GF 1 11NN (03/03) World Savings and the Globe are registered marks 1 C4756

# EXHIBIT D

*Your Payments with*
**Chevy Chase Bk. F.s.b.**
*And* **Chevy Chase Bk. F.s.b.**
*Could be Reduced and Fixed at $ 718 Per Month*
*Plus Get $50,000 To Pay-off Bills at $ 94?*

**Direct Lenders**
A California Mortgage Banker
6728 Admiral Ave.
Fair Oaks .CA 95628

**1-888-509-4954**

March 10, 2004

Elmer & Kathy Buick Jr.
181 Porter Ln
Auburn CA. 95602-9541
|||||.||.||.||||..||.|||.|.|.|.||..|||.||...||||..|

Buick Jr. File # 053 020 068 000

Dear Elmer & Kathy,

Here's a choice, save approximately $ 560 or $1,035 CASH every month, you decide and choose the best option for your family. Our research indicates you could easily keep a substantial amount of money in your account by re-financing Chevy Chase Bk. F.s.b. and Chevy Chase Bk. F.s.b.. The recent turmoil in our financial markets have again given us the lowest interest rates in over forty years.

**CONSIDER THIS:**   IT"S YOUR MONEY, keep it: The *"TheSavingsMaximizer"* loan saves you approximately $ 560 per month; $12,000 for the lifetime of your current mortgages. We also found that many homeowners have bills other than their home mortgages totaling about $50,000. *"TheDebtBuster"* loan saves you approximately $500.00 per month, MORE TO KEEP!

### *"TheSavingsMaximizer"* 30-Year Fixed Rate ARM Drops Your Payment to $ 718 monthly

Your loan would be $160,000. This pays off your first mortgage of about $ 89,000 and the second of approx. $ 71,000. The current interest rate is 3.500%* (APR 4.250%). Your new payment would be $ 718 monthly. If your family is growing, or your income fluctuates you may be able to sock away a lot of money for your retirement account.[5]

### *"TheDebtBuster"* Consolidates Your 1st and 2nd and up to $50,000 in Bills!

Your loan would be $210,000 with a monthly payment of $ 943. The interest rate is 3.500% and the APR is 4.250%. As mentioned above this $50,000 can be used to pay-off bills, but it can also be used for any other worthwhile purpose. When we deliver this loan peoples lives are dramatically improved.

Here's what you can expect from me:
1.  I handle all of the details from your first call to closing.
2.  I keep you up to date and well informed as we walk thru the process.
3.  I make sure you get the best rate and loan possible.
4.  I give you honest straight forward information.

### MAKE NO PAYMENT TILL JUNE  2004....IF YOU GET STARTED TODAY !

Call TOLL-FREE (888) 509-4954 and we will promptly answer all your questions and begin processing your loan request. For faster service complete the attached form and fax it to us at (916) 663-9647.

Sincerely,

*Dirk Johnson*

Dirk Johnson
Branch Manager

Email: directlender@infostations.com
Call Mon-Friday 9:00am-7:00pm
Toll Free (888) 509-4954

Complete this form and fax it to (916) 663-9647

Licensed
State of CA
CFL License #6071266

EQUAL HOUSING LENDER
*Underwriter Approval Required
Rates Subject to Change
Some Conditions Apply

# REDACTED

# EXHIBIT E



# OPTIONS LOAN WORKSHEET
## TRANS AMERICAN FINANCIAL

**Loan Analysis for:**
MR. & MRS. BUICK

| | |
|---|---|
| Options Loan Amount | $216,000 |
| Options Start Rate | 1.95% |
| Options Term | 30 |
| Second Loan Amount | $0 |
| Second Loan Rate | 0.00% |
| Traditional 30-Yr. Fixed Loan Amount | $216,000 |
| Traditional Mortgage Rate | 6.50% |
| Traditional Mortgage Term | 30 |
| Mortgage Insurance | None |
| Home Value | $355,000 |
| Annual Appreciation Rate | 10.00% |

*The Equity Builder is a true bi-weekly loan in that the monthly payment is divided in half and paid every two weeks. There are 26 bi-weekly periods each year.*

*The calculations shown in the graphs below represent the end of each year.*

**"Options Loan" vs TRADITIONAL 30-YR MTG**

### Year 1
| | |
|---|---|
| Minimum Payment | $830 |
| 30-Yr. Pymt | $1,365 |
| Cash Flow | |
| Deferred Interest | $4,970 |
| Loan Balance | $215,381 |
| Home Value | $390,500 |
| Loan to Value | 55% |

### Year 2
| | |
|---|---|
| Minimum Payment | $324 |
| 30-Yr. Pymt | $1,365 |
| Cash Flow | |
| Deferred Interest | $5,301 |
| Loan Balance | $214,906 |
| Home Value | $429,550 |
| Loan to Value | 50% |

### Year 3
| | |
|---|---|
| Minimum Payment | $880 |
| 30-Yr. Pymt | $1,365 |
| Cash Flow | |
| Deferred Interest | $4,970 |
| Loan Balance | $213,191 |
| Home Value | $472,505 |
| Loan to Value | 45% |

### Year 4
| | |
|---|---|
| Minimum Payment | $1,067 |
| 30-Yr. Pymt | $1,365 |
| Cash Flow | |
| Deferred Interest | $3,977 |
| Loan Balance | $210,521 |
| Home Value | $519,756 |
| Loan to Value | 41% |

### Year 5
| | |
|---|---|
| Minimum Payment | $1,161 |
| 30-Yr. Pymt | $1,365 |
| Cash Flow | |
| Deferred Interest | $0 |
| Loan Balance | $207,731 |
| Home Value | $571,731 |
| Loan to Value | 36% |

### Year 6
| | |
|---|---|
| Minimum Payment | $1,233 |
| 30-Yr. Pymt | $1,365 |
| Cash Flow | |
| Deferred Interest | $0 |
| Loan Balance | $201,776 |
| Home Value | $628,904 |
| Loan to Value | 32% |

# EXHIBIT F

# PUT THE "OPTIONS" CASH FLOW TO WORK FOR YOU!

## 5 YEAR CASH FLOW

| Options Cash Flow Analysis | Traditional 30 Year Fixed Rate @ 6.500% | Power Options Loan @ 1.95% | Power Options Cash Flow Over Fixed |
|---|---|---|---|
| Year 1 | $16,383 | $10,309 | $6,074 |
| Year 2 | $16,383 | $11,082 | $5,301 |
| Year 3 | $16,383 | $11,913 | $4,470 |
| Year 4 | $16,383 | $12,807 | $3,577 |
| Year 5 | $16,383 | $13,767 | $2,616 |
| 5 Year Totals | $81,916 | $59,878 | $22,038 |

Cash Flow is determined by subtracting the minimum "Options" loan payment, including secondary financing, from the 30-Year payment.

## USE THE CASH FLOW TO "BOOM" ANY SECOND MORTGAGE!

| Second Mortgage Analysis | Standard Second Loan Balance @ 0.00% | Power Options Second Loan Balance |
|---|---|---|
| End of Year 1 | $0 | $0 |
| End of Year 2 | $0 | $0 |
| End of Year 3 | $0 | $0 |
| End of Year 4 | $0 | $0 |
| Balance End of Year 5 | $0 | $0 |

## USE THE CASH FLOW TO PAY OFF CREDIT CARD DEBT

| End Of Year Balances | Normal Credit Card Balance | Options Credit Card Balance | Options Interest Savings |
|---|---|---|---|
| Year 1 | $0.00 | $0.00 | $0 |
| Year 2 | $0.00 | $0.00 | $0 |
| Year 3 | $0.00 | $0.00 | $0 |
| Year 4 | $0.00 | $0.00 | $0 |
| Year 5 | $0.00 | $0.00 | $0 |

## USE THE CASH FLOW FOR INVESTING FOR THE FUTURE

| Options Investment Analysis | Normal Savings Account @ 2.00% | Investment Account @ 10.00% | 401k Investment Account @ 10.00% |
|---|---|---|---|
| Year 1 | $6,130 | $6,361 | $9,541 |
| Year 2 | $11,604 | $12,578 | $18,867 |
| Year 3 | $16,350 | $18,578 | $27,863 |
| Year 4 | $20,289 | $24,288 | $36,399 |
| Year 5 | $23,339 | $29,548 | $44,319 |
| Years 6-10 | $28,791 | $48,612 | $72,918 |
| Years 11-15 | $29,661 | $79,982 | $119,973 |
| Years 16-20 | $31,498 | $131,596 | $197,393 |
| Years 21-25 | $34,865 | $216,515 | $324,773 |
| Years 26-30 | $38,462 | $356,255 | $534,382 |

The investment scenarios above assume payments into interest-bearing accounts for up to five years. After five years, no additional funds are added and the investment grows based on a constant rate of return. The 401k investment account assumes a 50% company match.

Payments assume maximum annual payment increase with a constant index. Actual results may vary. The Options start rate remains in effect for 1 month. The APR is subject to increase after the loan closes. This is not a commitment to lend. Standard credit card payment is assumed to be 3% of the balance.

# EXHIBIT G

MAY-8-2007  07:03A FROM:LOOMIS MEDICAL CLINI 916 652 4197        TO:13129601936        P.3/7

# THE OPTIONS LOAN

| Year | Interest Rate | 1st Mtg Mortgage Payment (Bi-Weekly) | 2nd Mtg Mortgage Payment (per Month) | Total Monthly Payment (*See Below) | Total Annual Payments | End of Year Balance |
|------|------|------|------|------|------|------|
| 1 | 4.798% | $396 | $0 | $859 | $10,309 | $215,561 |
| 2 | 4.798% | $426 | $0 | $924 | $21,391 | $214,805 |
| 3 | 4.798% | $458 | $0 | $993 | $33,304 | $213,160 |
| 4 | 4.798% | $493 | $0 | $1,067 | $46,111 | $210,521 |
| 5 | 4.798% | $530 | $0 | $1,147 | $59,878 | $206,768 |
| 6 | 4.798% | $569 | $0 | $1,233 | $74,677 | $201,775 |
| 7 | 4.798% | $612 | $0 | $1,328 | $90,587 | $195,401 |
| 8 | 4.798% | $616 | $0 | $1,335 | $106,501 | $188,607 |
| 9 | 4.798% | $616 | $0 | $1,335 | $122,615 | $181,479 |
| 10 | 4.798% | $616 | $0 | $1,335 | $138,529 | $174,001 |
| 11 | 4.798% | $616 | $0 | $1,335 | $154,644 | $166,158 |
| 12 | 4.798% | $616 | $0 | $1,335 | $170,658 | $157,926 |
| 13 | 4.798% | $616 | $0 | $1,335 | $186,672 | $149,292 |
| 14 | 4.798% | $616 | $0 | $1,335 | $202,686 | $140,233 |
| 15 | 4.798% | $616 | $0 | $1,335 | $218,700 | $130,730 |
| 16 | 4.798% | $616 | $0 | $1,335 | $234,714 | $120,760 |
| 17 | 4.798% | $616 | $0 | $1,335 | $250,728 | $110,301 |
| 18 | 4.798% | $616 | $0 | $1,335 | $266,742 | $99,328 |
| 19 | 4.798% | $616 | $0 | $1,335 | $282,756 | $87,816 |
| 20 | 4.798% | $616 | $0 | $1,335 | $298,771 | $75,740 |
| 21 | 4.798% | $616 | $0 | $1,335 | $314,785 | $63,070 |
| 22 | 4.798% | $616 | $0 | $1,335 | $330,799 | $49,777 |
| 23 | 4.798% | $616 | $0 | $1,335 | $346,813 | $35,833 |
| 24 | 4.798% | $616 | $0 | $1,335 | $362,827 | $21,203 |
| 25 | 4.798% | $616 | $0 | $1,335 | $378,841 | $5,855 |
| 26 | 4.798% | $616 | $0 | $1,335 | $394,855 | $0 |
| 27 | 4.798% | $0 | $0 | $0 | $0 | $0 |
| 28 | 4.798% | $0 | $0 | $0 | $0 | $0 |
| 29 | 4.798% | $0 | $0 | $0 | $0 | $0 |
| 30 | 4.798% | $0 | $0 | $0 | $0 | $0 |

* The First Mortgage is a bi-weekly loan that in which a half payment is made every two weeks. The total monthly payment is determined by multiplying the bi-weekly loan payment by 26, dividing by 12, and then adding the second mortgage payment to arrive at an estimated equevelent monthly payment

Payments assume maximum annual payment increase each year. Actual Results may vary. May effect amortization schedule, interest rates will change. Consult your regulation Z.

This is not an offer to lend. Equal Opportunity Lender. For illustration purposes only.

## MAKING YOUR MORTGAGE WORK FOR YOU !
# TRANS AMERICAN FINANCIAL
## DIRECT LENDER
### 1-888-509-4954

EQUAL OPPORTUNITY LENDER

# EXHIBIT H

(Page 3 of 6)

05-17-04   02:21PM   FROM-World SVCS L005 Sacramento LC Mikee   065   T-907  P 007/013  F-076

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must be provided (and the appropriate box checked) when [X] the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | [ ] V A  [ ] FHA  [X] Conventional  [ ] FmHA  [ ] Other: | Agency Case Number | Lender Case Number BUICK |
|---|---|---|---|
| Amount $ 216,000 | Interest Rate 1.950 % | No. of Months 360 | Amortization Type: [X] Fixed Rate  [ ] Other (explain): [ ] GPM  [ ] ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) 181 porter lane, auburn, CA 95602 | No. of Units 1 |
|---|---|
| Legal Description of Subject Property (attach description, if necessary) apn:053-020--068 | Year Built 1955 |

| Purpose of Loan | [ ] Purchase  [ ] Construction  [X] Other (explain):  [ ] Refinance  [ ] Construction-Permanent | Property will be: [X] Primary Residence  [ ] Secondary Residence  [ ] Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 1994 | Original Cost $ 145,000 | Amount Existing Liens $ 175,000 | Purpose of Refinance Cash-out / Home Improveme | Describe Improvements [ ] made [ ] to be made  Cost: $ |

| Title will be held in what Name(s) elmer buick  kathy buick | Manner in which Title will be held Husband and Wife | Estate will be held in: [X] Fee Simple  [ ] Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |

## III. BORROWER INFORMATION

|  | Borrower | Co-Borrower |
|---|---|---|
| Name (include Jr. or Sr. if applicable) | elmer buick | kathy buick |

| Social Security Number | Home Phone (incl. area code) | Age | Yrs. School | Social Security Number | Home Phone (incl. area code) | Age | Yrs. School |
|---|---|---|---|---|---|---|---|
| [X] | (530) 878-7331 | 66 | 16 | [X] | (530) 878-7331 | 47 | 16 |

| [X] Married  [ ] Unmarried (include single, divorced, widowed)  [ ] Separated | Dependents (not listed by Co-Borrower) no.   ages | [X] Married  [ ] Unmarried (include single, divorced, widowed)  [ ] Separated | Dependents (not listed by Borrower) no.   ages |

| Present Address (street, city, state, ZIP) [X] Own [ ] Rent   No. Yrs. 181 porter lane Auburn, CA 95602 | Present Address (street, city, state, ZIP) [X] Own [ ] Rent   No. Yrs. 181 porter lane Auburn, CA 95602 |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent   No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent   No. Yrs. |

| Former Address (street, city, state, ZIP) [ ] Own [ ] Rent   No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent   No. Yrs. |

## IV. EMPLOYMENT INFORMATION

|  | Borrower | Co-Borrower |
|---|---|---|

| Name & Address of Employer [ ] Self Employed  eskaton 8550 barton road granite bay, calif. 957 48 48 | Yrs. on the job 1  Yrs. employed in this line of work/profession 25 | Name & Address of Employer [ ] Self Employed  loomis medical center 6135 king road loomis ca | Yrs. on the job 4 mos  Yrs. employed in this line of work/profession 25 |
| Position/Title/Type of Business maint/supv. | Business Phone (incl. area code) (916) 789-0326 | Position/Title/Type of Business ins. billing clerk | Business Phone (incl. area code) (916) 652-0428 |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer [ ] Self Employed  Regency Health CARE Roseville, Calf. | Dates (from – to) Nov 1998 April 2003  Monthly Income $ 3000 | Name & Address of Employer [ ] Self Employed  Roseville Cardiology Two medical Plaza Suite 175  Roseville CA | Dates (from – to) 5-2000 12-1-2003  Monthly Income $ 300 00 |
| Position/Title/Type of Business Maint/Supv | Business Phone (incl. area code) 786 7200 | Position/Title/Type of Business SNS Billing Clerk | Business Phone (incl. area code) (916) 782 1246 |
| Name & Address of Employer [ ] Self Employed | Dates (from – to) | Name & Address of Employer [ ] Self Employed | Dates (from – to) |
|  | Monthly Income | | Monthly Income |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Borrower's Signature x Elmer Buick | Date 5/11 | Co-Borrower's Signature x Kathy Buick 5/11/04 | Date | Freddie Mac Form 65 10/92   Fannie Mae Form 1003 10/92 |

Page 1 of 4

Pipeline Solutions (800) 787-6843 / PAO32111 / 5.44

# EXHIBIT I

| **WORLD SAVINGS** | **NOTICE OF RIGHT TO CANCEL – GENERAL**<br>(LENDER CURRENTLY DOES NOT HAVE A LOAN ON THE PROPERTY.) |
|---|---|

### YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a security interest in your home. You have a legal right under federal law to cancel this transaction without cost, within three business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is **JUNE 10, 2004**                    ;

(2) the date you received your new Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the security interest in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

### HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at **WORLD SAVINGS, FINAL DOCUMENTATION, ATTN: CLOSING DEPARTMENT, 4101 WISEMAN BOULEVARD, BUILDING #203, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210) 509-1293.** (No other office or representative of World Savings is authorized to accept your notice to cancel.)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of **JUNE 15, 2004** (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL)

Consumer's Signature _____     Date _____

Please advise the Closing Agent, if you decide to cancel.

---

### ACKNOWLEDGEMENT OF RECEIPT OF COPIES

BY MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and return to World).

Consumer's Signature _____     Date _____

ELMER BUICK JR

Property Address:

181 PORTER LANE
AUBURN, CA 95602

Please return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies.

*024*

LENDER'S USE ONLY

SD332 (01.31.01/1-01) D32A

DISTRIBUTION:     1 COPY-RETURN SIGNED TO LENDER     2 COPIES-BORROWER     1 COPY-FILE

| **WORLD SAVINGS** | **NOTICE OF RIGHT TO CANCEL - GENERAL**<br>(LENDER CURRENTLY DOES NOT HAVE A LOAN ON THE PROPERTY.) |
|---|---|

## YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a security interest in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is **JUNE 10, 2004** ;

(2) the date you received your new Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the security interest in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at: **WORLD SAVINGS, FINAL DOCUMENTATION, ATTN: CLOSING DEPARTMENT, 4101 WISEMAN BOULEVARD, BUILDING #203, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210) 509-1293.** (No other office or representative of World Savings is authorized to accept your notice to cancel.)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of **JUNE 15, 2004** (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

## I WISH TO CANCEL (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL)

Consumer's Signature _____     Date _____

Please advise the Closing Agent, if you decide to cancel.

---

### ACKNOWLEDGEMENT OF RECEIPT OF COPIES

**BY MY SIGNATURE WHICH FOLLOWS,** I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and return to World).

Consumer's Signature  **KATHY BUICK**                               Date _____

Property Address:
    **181 PORTER LANE**
    **AUBURN, CA  95602**

Please return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies.


*024*
LENDER'S USE ONLY

(Page 1 of 1)

0025785692

| **WORLD SAVINGS** | **NOTICE OF RIGHT TO CANCEL – GENERAL** <br> (LENDER CURRENTLY DOES NOT HAVE A LOAN ON THE PROPERTY.) |
|---|---|

**YOUR RIGHT TO CANCEL**

You are entering into a transaction that will result in a security interest in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the new transaction, which is  JUNE 10, 2004  *E.B.*  :

(2) the date you received your new Truth-in-Lending disclosures; or

(3) the date you received this notice of your right to cancel

If you cancel the transaction, the security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the security interest in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation

**HOW TO CANCEL**

If you decide to cancel this transaction, you may do so by notifying us in writing, at WORLD SAVINGS, FINAL DOCUMENTATION, ATTN CLOSING DEPARTMENT, 4101 WISEMAN BOULEVARD, BUILDING #203, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210) 509-1293.   (No other office or representative of World Savings is authorized to accept your notice to cancel.)

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of *E.B.* JUNE 15, 2004    (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL)**

Consumer's Signature _____    Date _____

Please advise the Closing Agent, if you decide to cancel.

---

### ACKNOWLEDGEMENT OF RECEIPT OF COPIES

BY MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and return to World)

Consumer's Signature  *Elmer Buick*    Date  6-10-04
ELMER BUICK JR

Property Address.

181 PORTER LANE
AUBURN, CA  95602

Please return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies.



SD332 (01 31,01/1-01) D32A
    DISTRIBUTION    1 COPY-RETURN SIGNED TO LENDER    2 COPIES-BORROWER    1 COPY-FILE    LENDER'S USE ONLY

# EXHIBIT J

| **WORLD SAVINGS** | **GOOD FAITH ESTIMATE OF SETTLEMENT COSTS**<br>(THIS IS NOT A COMMITMENT TO LEND) |
|---|---|

BORROWER:   ELMER BUICK                                            DATE:   05/17/04
LOAN AMOUNT APPLIED FOR:      $216,000.00                LOAN NUMBER:   0025785692

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates – the actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| | | | | |
|---|---|---|---|---|
| * | # | 801 | LOAN ORIGINATION FEE PAID BY BORROWER _____ | .00 |
| * | # | 801.2 | BUYDOWN FEE PAID BY BORROWER _____ | .00 |
| | # | 801.4 | TAKE-OUT COMMITMENT FEE | .00 |
| * | # | 802 | LOAN DISCOUNT FEE PAID BY BORROWER _____ | .00 |
| * | # | 802.1 | SALEABLE LOAN DISCOUNT FEE _____ | .00 |
| * | | 803 | APPRAISAL/PROPERTY EVALUATION FEE (Property Inspection Waiver Fee may be substituted)_ | 325.00 |
| | | 804 | CREDIT REPORT FEE PAID BY LENDER _____ | 7.30 POC/L |
| | # | 807 | ASSUMPTION FEE _____ | .00 |
| * | # | 808 | TAX SERVICE FEE _____ | 61.00 |
| | # | 809 | STANDARD PROCESSING FEE (Paid at time of Application) _____ | 306.00 |
| * | # | 809 | STANDARD PROCESSING FEE (Paid at loan Closing) _____ | .00 |
| | # | 809.1 | MORTGAGE CREDIT CERTIFICATE (MCC) FEE _____ | .00 |
| * | # | 809.2 | EQUITY BUILDER SERVICING FEE _____ | 150.00 |
| | # | 810 | APPLICATION FEE (Paid at time of Application) _____ | .00 |
| * | # | 810 | APPLICATION FEE (Paid at loan Closing) _____ | .00 |
| * | # | 810.1 | CREDIT REVIEW FEE _____ | .00 |
| | # | 811 | TRUST REVIEW FEE _____ | .00 |
| * | # | 812 | MORTGAGE BROKER FEE PAID BY BORROWER AT CLOSING _____ | 2,510.00 |
| | # | 812.1 | MISC BROKER FEES PAID BY BORROWER OUTSIDE CLOSING | .00 |
| | | 812.2 | MORTGAGE BROKER FEE PAID BY LENDER | 4,320.00 POC/L |
| | | 813 | INITIAL FLOOD ZONE DETERMINATION FEE _____ | 4.00 |
| * | # | 814 | ONGOING FLOOD ZONE MONITORING FEE _____ | 9.00 |
| * | # | 815 | FUNDING FEE _____ | 50.00 |
| | # | 816 | RATE LOCK-IN FEE _____ | .00 |
| * | # | 817 | COMMITMENT FEE _____ | .00 |
| * | | 818 | DOCUMENT PREPARATION FEE _____ | 50.00 |
| | | 819 | LOAN SUBMISSION FEE PAID BY LENDER _____ | .00 |
| | | 820 | ELECTRONIC FACILITY FEE PAID BY LENDER _____ | .00 |
| * | # | 821 | LOAN SALES PROCESSING FEE _____ | .00 |
| * | # | 901 | INTEREST: PREPAID INTEREST PAID AT CLOSING (Estimate based on<br>maximum amount which may be collected.) ____ 21 DAYS @ 4.785% ___ | 596.19 |
| * | # | 902 | MORTGAGE INSURANCE PREMIUM _____ | .00 |
| | | 903 | HAZARD INSURANCE PREMIUM _____ | .00 |
| * | | 1001 | HAZARD INSURANCE RESERVE DEPOSIT _____ | .00 |
| * | # | 1002 | MORTGAGE INSURANCE RESERVE DEPOSIT _____ | .00 |
| * | | 1003 | PROPERTY TAX RESERVE DEPOSIT _____ | .00 |
| | # | 1101 | SETTLEMENT FEE _____ | 755.00 |
| | | 1103 | TITLE EXAMINATION FEE _____ | .00 |
| | | 1106 | NOTARY FEES _____ | 20.00 |
| | | 1107 | ATTORNEYS' FEES _____ | .00 |
| | | 1108 | TITLE INSURANCE PREMIUM _____ | 1,210.00 |
| | | 1111 | TAX CERTIFICATE FEE _____ | .00 |
| | # | 1112 | CLOSING PROTECTION LETTER (PA) _____ | .00 |
| | | 1201 | RECORDING FEE _____ | 65.00 |
| | | 1202 | CITY/COUNTY TAX/STAMPS/OTHER GOVERNMENT TRANSFER CHARGES _____ | .00 |
| | | 1203 | STATE TAX/STAMPS | .00 |
| | | 1204 | INTANGIBLE PROPERTY/RECORDING /MORTGAGE TAX_____ | .00 |
| | | 1301 | IMPROVEMENT LOCATION CERTIFICATE/SURVEY/PLOT PLAN FEE _____ | .00 |
| | | 1302 | PEST INSPECTION FEE _____ | .00 |
| | # | 1303 | COURIER FEE _____ | 30.00 |
| | | | **TOTAL ESTIMATED BORROWER PAID SETTLEMENT COSTS** | **$7,005.19** |

**\*  TO BE DEDUCTED FROM THE LOAN FUNDS / # INCLUDED IN CALCULATION OF ANNUAL PERCENTAGE RATE (APR)**
"POC/L" NEXT TO AN ITEM DESIGNATES A COST PAID BY LENDER OUTSIDE OF CLOSING (NOT INCLUDED IN TOTAL BORROWER PAID COSTS)
"PC/L" NEXT TO AN ITEM DESIGNATES A COST PAID BY LENDER AT CLOSING (NOT INCLUDED IN TOTAL BORROWER PAID COSTS)

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take a first lien on the property.

This form does not cover all items you may be required to pay in cash at settlement, for example, flood insurance premiums or a reserve deposit for flood insurance premiums.

**FOR INFORMATION ABOUT TAX CONSEQUENCES OF CLOSING YOUR LOAN, PLEASE CONSULT YOUR TAX ADVISOR.**

* 064 *

LENDER'S USE ONLY

| WORLD SAVINGS | GOOD FAITH ESTIMATE OF SETTLEMENT COSTS – CONTINUED (THIS IS NOT A COMMITMENT TO LEND) | LN NO.: 0025785692 |
|---|---|---|

Pursuant to RESPA if a lender requires the use of a particular provider of a settlement service for which the borrower pays any cost, then lender must give the name, address and telephone number of such providers. Listed below are the service providers World Savings has regularly required borrowers to use during the last 12 months. The estimates of costs (if any) shown on the corresponding line number on page 1 are based upon charges normally billed by these service providers.

* 803 – If applicable, appraisal services may be provided by either World Savings appraisers or independent contractors.

    Fannie Mae may waive a property inspection for which the fee is substantially less. Fees for inspection waivers will be paid to Fannie Mae; World Savings has an ongoing relationship with Fannie Mae.

    Fannie Mae
    3900 Wisconsin Avenue NW
    Washington DC, 20016-2892
    202-752-7000

* 804 – Credit Report Fee Paid by Lender

    CBC Companies, Inc.
    520 E. Main Street
    Carnegie, PA 15106
    800-925-0298

    Trans Union Corporation
    760 Sproul Road
    Springfield, PA 19064-0390
    800-632-1765

    Equifax Information Service
    5505 Peachtree Dunwoody Rd 600
    Atlanta, GA 30374-0241
    800-685-1111

    Experian Consumer Center
    701 Experian Pkwy – PO Box 949
    Allen, TX 75013-0949
    888-397-3742

* 808 – Tax Service will be provided by:
    First American Real Estate Tax Services
    8435 North Stemmons Freeway
    Dallas, TX 75247
    800-229-8428

* 813 and 814 – If there are estimates for Initial Flood Zone Determination Fee and Ongoing Flood Zone Monitoring Fee, these services will be provided by:
    First American Flood Data Services
    11902 Burnet Road
    Austin, TX 78758
    512-834-9595

* 902 – If there is an estimate for mortgage insurance premium, this service may be provided by one of the following companies:

    Radian Guaranty Inc.
    400 Market Street, 2nd Floor
    Philadelphia, PA 19106
    877-723-4261

    United Guaranty Insurance
    230 N. Elm Street
    Greensboro, NC 27420
    888-822-5584

    PMI Mortgage Insurance Company
    3003 Oak Road
    Walnut Creek, CA 94597
    800-366-1143

    Republic Mortgage Insurance Company
    190 Oak Plaza Blvd.
    Winston-Salem, NC 27105
    800-884-7642

* 1206 – If applicable, homebuyer counseling services may be provided by one of the following non-profit organizations.

    ACORN Housing Corporation, Inc.
    650 S. Clark Street, Suite 301
    Chicago, IL 60605
    312-939-1611

    Housing Partnership, Inc.
    4016 Broadway Avenue
    West Palm Beach, FL 33407
    561-841-3500

    ACORN Housing Corporation, Inc.
    1018 West Roosevelt Avenue
    Phoenix, AZ 85007
    602-253-1111

    Neighborhood Housing Services
    of Southern Nevada, Inc.
    1849 Civic Center Drive
    North Las Vegas, NV 89030
    702-649-0998

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

NOTE REGARDING LINE 812.2 ON PAGE 1 ("MORTGAGE BROKER FEE PAID BY LENDER")

NOTE:  THE LOAN YOU HAVE APPLIED FOR INCLUDES A "MORTGAGE BROKER FEE PAID BY LENDER," WHICH APPEARS ON LINE 812.2 ON PAGE 1.  IN RETURN FOR THE SERVICES THEY PROVIDE, MORTGAGE BROKERS RECEIVE COMPENSATION (FEES) FROM BORROWERS DIRECTLY OR FROM LENDERS (MORTGAGE BROKER FEE PAID BY LENDER) OR FROM BOTH.  USUALLY, IF THE LENDER PAYS A FEE TO A MORTGAGE BROKER, THE BORROWER PAYS LOWER DIRECT FEES TO THE MORTGAGE BROKER AND IN RETURN FOR THIS LOWER UP-FRONT COST, PAYS A HIGHER INTEREST RATE ON THE LOAN. CONVERSELY, IT IS OFTEN POSSIBLE FOR BORROWERS TO PAY HIGHER UP-FRONT COSTS IN RETURN FOR A LOWER INTEREST RATE ON THE LOAN.  BE SURE TO ASK YOUR MORTGAGE BROKER TO EXPLAIN THE VARIOUS OPTIONS THAT ARE AVAILABLE TO YOU.

(Page 1 of 2)

A U S DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT

Alliance Title Company
1640 Lead Hill Blvd , Ste 220
Roseville, CA 95661

FINAL

| B TYPE OF LOAN | | OMB No 2502-0265 |
|---|---|---|
| 1 ☐ FHA | 2 ☐ FMHA | 3 ☐ CONV UNINS |
| 4 ☐ VA | 5 ☒ CONV INS | |
| 6 ESCROW FILE NUMBER | | 7 LOAN NUMBER |
| 12249408-854  MG2 | | 0025785692 |
| 8 MORTGAGE INSURANCE CASE NUMBER | | |

C NOTE  This form is furnished to give you a statement of actual settlement costs  Amounts paid to and by the settlement agent are shown
Items marked "(P O C )" were paid outside the closing, they are shown here for informational purposes and are not included in the totals

D NAME OF BORROWER        Elmer Buick and Kathy Buick

ADDRESS OF BORROWER       181 Porter Lane
                          Auburn, CA 95602

E NAME OF SELLER          Elmer Buick Jr  and Kathy Buick

ALLIANCE TITLE COMPANY
hereby certifies this is a true
and correct copy of the original

ADDRESS OF SELLER

*[signature]*

Authorized Signature

F NAME OF LENDER          World Savings & Loan Assn
ADDRESS OF LENDER         4101 Wiseman Blvd , Bldg  102
                          San Antonio, TX  78251

G PROPERTY LOCATION       181 Porter Lane
                          Auburn, CA 95602
                          Placer 053-020-008-000

H SETTLEMENT AGENT        Alliance Title Company
PLACE OF SETTLEMENT       1640 Lead Hill Blvd , Ste 220, Roseville, CA 95661

| I SETTLEMENT DATE  08/15/2004 | PRORATION DATE | FUNDING DATE  08/15/2004 |
|---|---|---|

| J          SUMMARY OF BORROWER'S TRANSACTION | | K          SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower:** | | **400. Gross Amount Due To Seller:** | |
| 101 Contract Sales Price | | 401 Contract Sales Price | |
| 102 Personal Property | | 402 Personal Property | |
| 103 Settlement charges to Borrower (line 1400) | 5,362 70 | 403 | |
| 104 Payoff to Washington Mutual | 84,253 76 | 404 | |
| 105 Payoff to Chevy Chase Bank | 92,444 46 | 405 | |
| Adjustments For Items Paid By Seller In Advance | | Adjustments For Items Paid By Seller In Advance | |
| 106 City/Town Taxes | | 406 City/Town Taxes | |
| 107 County Taxes | | 407 County Taxes | |
| 108 Assessments | | 408 Assessments | |
| 109 | | 409 | |
| 110 | | 410 | |
| 111 | | 411 | |
| 112 | | 412 | |
| 113 | | 413 | |
| 114 | | 414 | |
| 115 | | 415 | |
| 120 Gross Amount Due from Borrower | 182,060.92 | 420 Gross Amount Due to Seller | |
| **200. Amounts Paid by or In behalf of Borrower:** | | **500. Reductions In Amount Due To Seller:** | |
| 201 Deposit or earnest money | | 501 Excess deposit (see instructions) | |
| 202 Principal amount of new loan(s) | 216,000.00 | 502 Settlement charges to Seller (line 1400) | |
| World Savings | | | |
| Transamerica Financial | | | |
| 203 Existing loan(s) taken subject to | | 503 Existing loan(s) taken subject to | |
| 204 | | 504 Payoff of first mortgage loan | |
| 205 | | 505 Payoff of second mortgage loan | |
| 206 | | 506 | |
| 207 | | 507 | |
| 208 | | 508 | |
| 209 | | 509 | |
| Adjustments For Items Unpaid By Seller | | Adjustments For Items Unpaid By Seller | |
| 210 City/Town Taxes | | 510 City/Town Taxes | |
| 211 County Taxes | | 511 County Taxes | |
| 212 Assessments | | 512 Assessments | |
| 213 | | 513 | |
| 214 | | 514 | |
| 215 | | 515 | |
| 216 | | 516 | |
| 217 | | 517 | |
| 218 | | 518 | |
| 219 | | 519 | |
| 220 Total Paid by/or Borrower | 216,000.00 | 520 Total Reductions in Amount Due Seller | |
| **300. Cash at Settlement from/to Borrower:** | | **600. Cash at Settlement to/from Seller:** | |
| 301 Gross amount due from Borrower (line 120) | 182,060 92 | 601 Gross amount due to Seller (line 420) | |
| 302 Less amount paid by/for Borrower (line 220) | 216,000.00 | 602 Less reductions in amount due Seller (line 52 | |
| 303 Cash TO Borrower | 33,939 08 | 603 Cash TO/FROM Seller | 0 00 |

(Page 2 of 2)

| L. SETTLEMENT CHARGES | ESCROW FILE NUMBER | | OMB No 2502-0265 12249408-854 MG2 |
|---|---|---|---|
| **700. Total Sales/Broker's Commission:** | | Paid from Borrower's Funds at Settlement | Paid from Seller's Funds at Settlement |
| Based on Price $ | | | |
| Division of Commission (line 700) follows | | | |
| 701. $ | | | |
| 702. $ | | | |
| $ | | | |
| 703 Commission paid at settlement | | | |
| 704 | | | |
| **800. Items Payable In Connection With Loan:** | | | |
| 801 Loan Origination Fee 1% to Transamerica Financial | | 2,160.00 | |
| 802 Loan Discount Fee | | | |
| 803 Appraisal Fee | | | |
| 804 Credit Report to World Savings & Loan Assn | (Lender $7.30 POC) | | |
| 805 Lenders Inspection Fee | | | |
| 806 Mortgage Insurance Application Fee | | | |
| 807 Assumption Fee | | | |
| 808 | | | |
| 809 | | | |
| 810 | | | |
| 811 **See attached for breakdown | | 990 00 | |
| Yield Spread Premium to Transamerica Financial | ( $4,320.00) | | |
| **900. Items Required By Lender To Be Paid In Advance:** | | | |
| 901 Interest from 06/15/04 to 07/05/04 @$28.39/day (20 days) | | 567 80 | |
| 902 Mortgage Insurance Premium | | | |
| 903. Hazard Insurance Premium | | | |
| 904 | | | |
| 905 | | | |
| **1000. Reserves Deposited With Lender:** | | | |
| 1001 Hazard Insurance 2 months @$33.23 per month | | 66.46 | |
| 1002 Mortgage Insurance | | | |
| 1003 City Property Taxes | | | |
| 1004 County Property Taxes 7 months @$60.65 per month | | 424.55 | |
| 1005 Annual Assessments | | | |
| 1006 | | | |
| 1007 | | | |
| 1008 Aggregate Adjustment months @$ | | 397 11 | |
| **1100. Title Charges:** | | | |
| 1101 Settlement or closing fee to Alliance Title Company | | 652.00 | |
| 1102 Abstract or title search | | | |
| 1103 Title examination | | | |
| 1104 Title insurance binder | | | |
| 1105 Document preparation | | | |
| 1106 Notary fees to Ron Texeira | | 65 00 | |
| 1107 Attorney's Fees | | | |
| (includes above item numbers ) | | | |
| 1108 Title Insurance | | | |
| (includes above item numbers ) | | | |
| 1109 Lender's coverage $ 216,000.00 | | 658.00 | |
| 1110 Owner's coverage $ | | | |
| Lender's coverage $ | | | |
| Lender's coverage $ | | | |
| 1111 | | | |
| 1112 | | | |
| 1113 Loan tie in fee to Alliance Title Company | | 100 00 | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201 Recording Fees Deed$ Mortgage $ 76.00 Release $ | | 76 00 | |
| 1202 City/County tax/stamps | | | |
| 1203 State tax/stamps | | | |
| 1204 City Transfer Tax | | | |
| 1205 County Transfer Tax | | | |
| 1206 | | | |
| 1207 | | | |
| **1300. Additional Settlement Charges:** | | | |
| 1301 Survey to | | | |
| 1302 Pest Inspection | | | |
| 1303 Property Taxes Due | | | |
| 1304 Homeowners Insurance Premium to est/if less than 3mos existing | | | |
| 1305 Home Warranty # | | | |
| 1306 | | | |
| 1307 | | | |
| 1400 Total Settlement Charges (Enter on line 103,Section J and line 502, Section K) | | 5,362 70 | 0.00 |

1    interest in the property, or upon sale of the property, whichever occurs first").

2        48.    World Savings' rescission and material TILA disclosures were defective.

3    Accordingly, plaintiffs were entitled to rescission and sent a timely rescission notice to World

4    Savings on May 7, 2007.

5        49.    Within twenty days of receiving the rescission notice sent by plaintiffs on May

6    7, 2007, defendant World Savings should have released its security interest in plaintiffs' loan

7    and paid back to plaintiffs any money or property that plaintiffs paid to it in connection with

8    the loan. See 12 C.F.R. §226.23(d)(2). Defendant World Savings has not done so.

9        50.    Defendant's failure to honor the rescission request is a violation of the Truth in

10    Lending Act 15 U.S.C. § 1640. Plaintiffs are entitled to actual plus statutory damages and

11    other relief.

12        WHEREFORE, plaintiffs pray for relief as set forth hereinafter.

13    **COUNT TWO -- VIOLATION OF CALIFORNIA LAW**

14    **UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code §§ 17200 et seq.)**

15        51.    Plaintiffs incorporate paragraphs 1 through 39 above as though set forth in full

16    herein and further allege as follows.

17        52.    As described above, defendants have committed acts of unfair competition,

18    proscribed by Business and Professions Code section 17200, *et seq.*, including, but not limited

19    to, the following:

20        a.    Representing that the loan obtained by plaintiffs, the "Equity Builder,"

21            would build the equity in plaintiffs' home faster than other loans and, in

22            doing so misled plaintiffs as to the potential for and consequences of

23            negative amortization;

24        b.    Representing that the interest rate on plaintiffs' mortgage would never

25            exceed 4.798% when such representations were false;

26        c.    Representing that the initial interest rate on plaintiff' mortgage would be

27            1.95% and that the interest rate on the loan would never exceed 4.798% and,

28            by doing so, misleading plaintiffs as to the cost of credit;

SECOND AMENDED COMPLAINT

11