1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11  ELMER and KATHY BUICK,              No. 2:07-CV-01447-MCE-KJM

12            Plaintiffs,

13       v.                            MEMORANDUM AND ORDER

14  WORLD SAVINGS BANK,
    TRANSAMERICAN FINANCIAL
15  CORPORATION,

16            Defendants.

17
                              ----oo0oo----
18

19       Plaintiffs, Elmer and Kathy Buick, filed this action against

20  Defendants, Transamerican Financial Corporation ("Transamerican")

21  and World Savings Bank ("World"), for claims arising under the

22  Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and

23  California's Unfair Business Practices Act ("UCL"), California

24  Business & Professions Code § 17200 et seq., as well as for

25  fraud, negligent misrepresentation, and breach of fiduciary duty.

26  ///

27  ///

28  ///

                                    1

1  Plaintiffs subsequently dropped their fraud and negligent
2  misrepresentation claims against all parties, but still maintain
3  their TILA, UCL, and breach of fiduciary duty claims against
4  World.  Presently before the Court is World's Motion to Dismiss
5  those claims.[1]

6

7                          **BACKGROUND**[2]

8

9     In 2004, World marketed its Pick-a-Payment[SM] Equity Builder[SM]
10 Mortgage.  That loan had an initial low interest rate that
11 expired after three months.  The loan was structured in such a
12 way that it could potentially result in negative amortization,
13 which occurs when, despite a customer making the required minimum
14 payments, the principal owed on the loan increases, rather than
15 decreases, over the life of the loan.  Plaintiffs allege that
16 referring to a loan that can result in negative amortization as
17 an "Equity Builder[SM]" loan is false and misleading.
18    Plaintiffs further allege that World knew or should have
19 known that brokers marketing that Equity Builder[SM] loan would
20 promote its low initial rate and minimize both its higher
21 eventual interest rates and its potential for negative
22 amortization.
23 ///

24 ───────────────────
25      [1] Because oral argument will not be of material assistance,
   the Court ordered this matter submitted on the briefing.  E.D.
26 Cal. Local Rule 78-230(h).

27      [2] The following facts are taken primarily from Plaintiffs'
   Complaint.  For the purposes of this Motion, the Court accepts
28 these facts as true and makes all inferences in the light most
   favorable to Plaintiffs.

Additionally, Plaintiffs allege that World knew that the label Equity Builder$^{SM}$ was misleading, confusing, and conflicted with other disclosures.  According to Plaintiffs, World provided customers with documents that referenced only the low initial rate, without explaining that the rate would increase in the future.

World marketed its products through agents.  One agent was Dirk Kuivenhoven, also known as Dirk Johnson, also known as Mark Rawlings ("Mr. Kuivenhoven").  Mr. Kuivenhoven, a licensed California mortgage broker, was Transamerican's branch manager in 2004.

In March of 2004, under the alias Dirk Johnson and on the letterhead of Direct Lenders, a name Plaintiffs believe to be an alias of Transamerican, Mr. Kuivenhoven sent a letter to Plaintiffs offering to reduce their mortgage payments by refinancing their loan at a 3.5% interest rate.  Specifically that letter stated:

> Here's what you can expect from me:
> 1.   I handle all of the details from your first call
>      to closing.
> 2.   I keep you up to date and well informed as we walk
>      thru [*sic*] the process.
> 3.   I make sure you get the best rate and loan
>      possible.
> 4.   I give you honest straight forward information.

When Plaintiffs subsequently met with Mr. Kuivenhoven, he told them he would get them an Equity Builder$^{SM}$ loan with an initial rate of 1.95% and that the loan balance would decrease as long as Plaintiffs made the required minimum payments.

///

///

3

1  Mr. Kuivenhoven also allegedly assured them that they could

2  convert the loan to a fixed rate loan by contacting World, that

3  the interest rate on the mortgage would never exceed 4.798%, and

4  that the bi-weekly payments would peak at $616 in the eighth

5  year.

6      When Mr. Kuivenhoven prepared the World loan application, he

7  indicated that the interest rate would be 1.95%, and checked the

8  "Other" box to indicate the loan type, but he did not include any

9  elaboration of the details of the particular type of loan.

10     Plaintiffs' loan closed on June 10, 2004.  World provided

11 Plaintiffs with a copy of their loan application and Uniform

12 Underwriting and Transmittal Summary, both of which showed a

13 1.95% interest rate.  Additionally, World delivered each borrower

14 copies of the notice of his or her right to rescind ("Notice"),

15 though Plaintiffs allege that Ms. Buick received only one copy,

16 rather than the two copies required under the regulations.

17     Plaintiffs further allege that they trusted, believed and

18 reasonably relied upon Mr. Kuivenhoven's representations about

19 the Equity Builder$^{SM}$ loan.  Therefore, they did not read the loan

20 papers on signing because they assumed those documents were

21 consistent with Mr. Kuivenhoven's representations.

22     Plaintiffs allege that the loan terms were not as promised

23 and that they were victims of a bait and switch.  Though the

24 initial loan rate was 1.95%, that rate was only applicable for up

25 to two months after closing and could adjust up to 11.950%.

26 ///

27 ///

28 ///

4

1  According to Plaintiffs, their current loan terms are far worse
2  than those under their prior mortgage, the deal they were
3  promised, or the loan that they could have gotten in a fair
4  market transaction.

5
6                              **STANDARD**

7      **A.   Motion to Dismiss Under Rule 12(b)(6)**

8
9         On a motion to dismiss for failure to state a claim under
10  Rule 12(b)(6), all allegations of material fact must be accepted
11  as true and construed in the light most favorable to the
12  nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,
13  337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and
14  plain statement of the claim showing that the pleader is entitled
15  to relief" in order to "give the defendant fair notice of what
16  the...claim is and the grounds upon which it rests."  Bell Atl.
17  Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007)
18  (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  While a
19  complaint attacked by a Rule 12(b)(6) motion to dismiss does not
20  need detailed factual allegations, a plaintiff's obligation to
21  provide the "grounds" of his "entitlement to relief" requires
22  more than labels and conclusions, and a formulaic recitation of
23  the elements of a cause of action will not do.  Id. at 1964-65
24  (internal citations and quotations omitted).  Factual allegations
25  must be enough to raise a right to relief above the speculative
26  level.
27  ///
28  ///

Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  A court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment...."  Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962).  Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment.  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

**B.   General Pleading Requirements**

"Rule 8(a)(2)...requires a 'showing,' rather than a blanket assertion of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Twombly, 127 S. Ct. at 1965 n.3. (factual allegations necessary to plead "grounds" on which claim rests.)

A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.  If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."

6

<u>Id</u>.   Nevertheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" <u>Id</u>. at 1965.

**ANALYSIS**

A.   **Plaintiffs Allege Facts Sufficient to State a TILA Claim Against World.**

1.   **Plaintiffs Adequately Plead World's Failure to Provide the Requisite Number of Notices.**

The most straight-forward of Plaintiffs' TILA claims is that, at closing, they did not receive the proper number of Notices of their right to rescind.  Federal regulations state, "In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind."  12 C.F.R. § 226.23(b)(1).  Furthermore, "[i]f the required notice...[is] not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first."  12 C.F.R. § 226.23(a)(3). Plaintiffs allege that Ms. Buick received only one Notice.  If true, they argue, Plaintiffs' rescission period extended to include the three-year period following consummation of the agreement, and Plaintiffs' May 7, 2007, request to rescind was timely.

///
///
///

1   World disagrees and argues that Ms. Buick actually received

2   both Notices.  World produced a signed copy of the Notice to

3   support its assertion.  Nevertheless, World's form serves only to

4   create a rebuttable, rather than conclusive, presumption that

5   Ms. Buick received that document.  15 U.S.C. 1635(c).  Plaintiffs

6   are, therefore, entitled to rebut that presumption.

7       Accordingly, Plaintiffs claim that, though Ms. Buick may

8   have signed World's copy, that copy was never delivered to her as

9   required by the regulations.  Construing all facts in the light

10  most favorable to Plaintiffs, the Court cannot say that they have

11  failed to state a claim.  Plaintiffs may be able to provide

12  sufficient evidence to support their assertion that the second

13  copy of the notice was not delivered to Ms. Buick.  Hence,

14  World's defense that both Plaintiffs received all required copies

15  is not sufficient to warrant dismissal.

16      Alternatively, World argues that, regardless of the above

17  analysis, one Notice is all that TILA requires in this case

18  because Plaintiffs are married co-borrowers.  World relies on an

19  unpublished Ohio state case and a Federal Bankruptcy Court case

20  from Kansas to support its position.

21      First, in Contimortgage v. Delawder, the Ohio state court

22  was unable to determine, after a bench trial, how many notices

23  those co-borrowers actually received.  2001 WL 884085 (4th Dist.

24  Ohio 2001).  Nevertheless, the trial court stated that, even if

25  the requisite number had not been delivered, "these problems

26  constituted mere technical violations of TILA and did not extend

27  the right or rescission."  Id. at *3.

28  ///

8

1    The appellate court noted that the trial court's decision was
2    consistent with precedent holding "TILA does not require perfect
3    notice; rather, it requires a clear and conspicuous notice of
4    rescission rights." Id. (citing Smith v. Highland Bank, 108 F.3d
5    1325, 1327 (11th Cir. 1997); Veal v. Citibank, F.S.B., 85 F.3d
6    577, 580 (11th Cir. 1996)); In re Porter, 961 F.2d 1066, 1076 (3d
7    Cir. 1992)).  However, that statement runs contrary to the
8    reasoning of the Ninth Circuit, which has long held that even
9    technical violations result in liability to the creditor. See
10   Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 704
11   (9th Cir. 1986).  Therefore, World's first case is inapposite.

12        World's reliance on In re Jones is similarly misplaced.
13   298 B.R. 451 (D. Kan. 2003).  In that case, the court
14   specifically stated that both husband and wife were entitled to
15   two copies of the Notice of rescission. Id. at 459-460.
16   Nevertheless, World places great weight on dicta in which the
17   court stated, "If Jones and his wife conceded that each of them
18   received one copy of the ... Notice, the court might be inclined
19   to agree that the rescission period should not be extended
20   because they did not each receive a second copy of the Notice."
21   Id. at 459.  However, that court also went on to point out:

22        The TILA and Regulation Z might easily have declared
          that co-borrowers who are spouses are entitled to only
23        one set of the required documents between them, but
          neither the statute nor the regulation does so.
24        Because the right to rescind under § 1635 exists only
          when borrowers are giving a mortgage on their home to
25        secure a loan, the most common co-borrowers are likely
          to be a married couple, so it is inconceivable that
26        Congress and the Federal Reserve Board overlooked this
          situation when they specified that each borrower with
27        the right to rescind must be given his or her own set
          of the documents containing all the required
28        information.

                                  9

1  Id. At 460.

2      The Official Staff Commentary to 12 C.F.R. § 226.23(b)

3  confirms that court's last point:

> In a transaction involving joint owners, both of whom
> are entitled to rescind, both must receive the notice
> of the right to rescind and disclosures. For example,
> if both spouses are entitled to rescind a transaction,
> each must receive two copies of the rescission
> notice...and one copy of the disclosures.

8  12 C.F.R. Pt. 226, Supp. I, Federal Reserve Board Commentary to

9  Paragraph 23(b).  The Commentary is, at worst, persuasive

10 evidence that both husband and wife are entitled to receive two

11 copies of the Notices.  At best, according to at least one court,

12 the Commentary should be afforded the same deference as the

13 regulations themselves.  In re Wright, 133 B.R. 704, 708 (E.D.

14 Pa. 1991).  Therefore, this Court finds that both Plaintiffs were

15 entitled to receive two copies of the Notice.

16     Because Plaintiffs have adequately alleged that they

17 received less than the proper number of notices prescribed by

18 TILA, and because they similarly alleged enough facts to show

19 that they could potentially rebut the presumption created by

20 World's Motion, Plaintiffs have stated a claim against World

21 under TILA and World's Motion is denied.

22

23             **2.   Plaintiffs Are Not Prohibited from Seeking TILA
                    Damages.**

24

25     World next asks this Court to strike Plaintiffs' TILA claim

26 for damages because Plaintiffs admit that they did not read the

27 loan documents and, therefore, cannot prove the reliance

28 necessary to show causation.

1   Federal Rule of Civil Procedure 12(f) provides, "The court may
2   strike from a pleading an insufficient defense or any redundant,
3   immaterial, impertinent, or scandalous matter."  "A motion to
4   strike under Rule 12(f) should be denied unless it can be shown
5   that no evidence in support of the allegation would be
6   admissible, or those issues could have no possible bearing on the
7   issues in the litigation."  <u>Gay-Straight Alliance Network v.</u>
8   <u>Visalia Unified Sch. Dist.</u>, 262, F. Supp. 2d 1088, 1099 (E.D.
9   Cal. 2001).

10       To support its argument World cites to <u>In re Smith</u>, in which
11  the Ninth Circuit stated, "[I]n order to receive actual damages
12  for a TILA violation..., a borrower must establish detrimental
13  reliance."  289 F.3d 1155, 1157 (9th Cir. 2002).  However, that
14  opinion, and World's remaining authority, concerned a TILA
15  disclosure violation, not a violation based on a lender's failure
16  to provide the proper number of Notices to a borrower.

17       Additionally, World's failure to honor Plaintiffs'
18  rescission request, which they tendered within three years of the
19  allegedly defective Notice, constitutes a distinct and actionable
20  violation.  <u>See</u> <u>In re Wright</u>, 133 B.R. 704 (E.D. Pa. 1991) ("The
21  failure of a lender to properly act on a rescission is a new
22  violation separate and distinct from the disclosure violation
23  that gave rise to the right to rescind.") (citing 15 U.S.C.
24  § 1640(g); 15 U.S.C. 1635(g)).  Therefore, Plaintiffs' prayer for
25  damages is sufficient to the extent it is based on World's
26  alleged failure to provide the proper number of Notices or to
27  honor Plaintiffs' request to rescind.
28  ///

1   See Belini v. Washington Mut. Bank, FA, 412 F.3d 17, 25 (1st Cir.

2   2005) (finding creditor that improperly failed to honor

3   rescission request could be liable for damages under section

4   1640).

5        Finally, World further argues that Plaintiffs' TILA claim is

6   barred by the one-year statute of limitations.  See 15 U.S.C.

7   § 1640(e).  However, Plaintiffs have raised a viable claim under

8   TILA regarding World's failure to deliver the proper number of

9   Notices and failure to honor Plaintiffs' request to rescind.  The

10  statute of limitations would have begun to run at the time World

11  failed to honor Plaintiffs' rescission request based on the prior

12  alleged Notice violation.  Plaintiffs filed this action within

13  one-year of their request for rescission.  Hence, Plaintiffs'

14  damages claim is not time-barred for purposes of this motion, and

15  Defendant's Motion to Strike Plaintiffs' claim for damages under

16  TILA is denied.

17

18        **B.   Plaintiffs Fail to State a Claim Against World Under
           California's Unfair Competition Law Claim, California**
19        **Business & Professions Code § 17200 et seq.**

20

21       World claims that, since it is a Federal Savings Bank, Home

22  Owners' Loan Act of 1933 ("HOLA"), 12 U.S.C. § 1461 et seq.,

23  preempts Plaintiffs' state law claims.[3]  World argues that

24  Plaintiffs' UCL claims are preempted to the extent that they

25  attempt to regulate Worlds' disclosure and advertising practice.

26  ///

27  _____

28       [3] Plaintiffs do not dispute World's assertion that it is a
    federally chartered association.

12

At the beginning of this year, the Ninth Circuit addressed a case similar to the one at hand.  See Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001 (9th Cir. 2008).  This Court quotes at length from that decision because that analysis is directly applicable here:

> We have identified three ways federal law may preempt state law:
>
>> First, Congress may preempt state law by so stating in express terms. Second, preemption may be inferred when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. In such cases of field preemption, the mere volume and complexity of federal regulations demonstrate an implicit congressional intent to displace all state law. Third, preemption may be implied when state law actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress....
>
> Bank of Am. v. City and County of S.F., 309 F.3d 551, 558 (9th Cir. 2002) (internal quotation marks and citations omitted).
>
> Appellants' arguments against preemption are premised on their assertion that *conflict* preemption analysis applies to the case at bar. We agree, however, with the district court, and hold that *field* preemption applies because Appellants' state law claims provide state remedies for violations of federal law in a field preempted entirely by federal law. The general presumption against preemption is not applicable here, and the relevant regulation is clear-the field of lending regulation of federal savings associations is preempted.  See 12 C.F.R. § 560.2...
>
>> ...
>
> While there is a strong presumption against federal preemption of state law governing historic police powers, the Supreme Court has held that the presumption does not apply "when [a] State regulates in an area where there has been a history of significant federal presence." United States v. Locke, 529 U.S. 89, 108 (2000).

"Congress has legislated in the field of banking from the days of M'Cullough v. Maryland, 17 U.S. (4 Wheat.) 316, creating an extensive federal statutory and regulatory scheme." Bank of Am., 309 F.3d at 558 (citation omitted).  Specific to this case, Congress enacted the Home Owners' Loan Act of 1933 ("HOLA") to charter savings associations under federal law, at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent. Id. at 559.  HOLA was designed to restore public confidence by creating a nationwide system of federal savings and loan associations to be centrally regulated according to nationwide "best practices." Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 160-161 (1982). We have described HOLA and its following agency regulations as a "radical and comprehensive response to the inadequacies of the existing state system," and "so pervasive as to leave no room for state regulatory control." Conference of Fed. Sav. & Loan Ass'n v. Stein, 604 F.2d 1256, 1257 (9th Cir. 1979), aff'd, 445 U.S. 921.  "[B]ecause there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable." Bank of Am., 309 F.3d at 559 (internal quotation marks omitted).

...

Through HOLA, Congress gave the Office of Thrift Supervision ("OTS") broad authority to issue regulations governing thrifts.  12 U.S.C. § 1464.  As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2.  That the preemption is expressed in OTS's regulation, instead of HOLA, makes no difference because, "[f]ederal regulations have no less preemptive effect than federal statutes." de la Cuesta, 458 U.S. at 153.  The regulation reads inter alia:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section....

///

///

14

12 C.F.R. § 560.2(a) (emphasis added).  Section
560.2(b) goes on to provide a list of specific types of
state laws that are preempted, two of which, § 560.2
(b)(5) and § 560.2(b)(9), are specifically applicable
to this case. [T]he types of state laws preempted by
paragraph (a) of this section, include, without
limitation, state laws purporting to impose
requirements regarding:

>     (5) Loan-related fees, including without
>     limitation, initial charges, late charges,
>     prepayment penalties, servicing fees, and
>     overlimit fees;
>                             . . .
>     (9) Disclosure and advertising, including
>     laws requiring specific statements,
>     information, or other content to be included
>     in credit application forms, credit
>     solicitations, billing statements, credit
>     contracts, or other credit-related documents
>     and laws requiring creditors to supply copies
>     of credit reports to borrowers or applicants;

12 C.F.R. § 560.2(b)(5) and (9).

OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept.
30, 1996).

Silvas at 514 F.3d 1004-1005 (9th Cir. 2008) (internal headings

and footnote omitted).  Based on the above authority, World

argues that Plaintiffs' UCL cause of action is preempted by HOLA.

    Plaintiffs allege several grounds for relief under the UCL.

Cal. Bus. & Prof. Code §§ 17200 et seq.  Defendants argue that

all of Plaintiffs' claims fall directly within the ambit of

section 560.2's express preemption of state laws attempting to

regulate a federal bank's advertising and disclosures.

Plaintiffs' allegations are as follows:

///

///

///

///

///

1       As described above, defendants have committed acts of
unfair competition, proscribed by Business and
2   Professions Code section 17200, et seq., including, but
not limited to, the following:

3       a.   Representing that the loan obtained by plaintiffs,
the "Equity Builder," would build the equity in
4           plaintiffs' home faster than other loans and, in
doing so misled plaintiffs as to the potential for
5           and consequences of negative amortization;

6       b.   Representing that the interest rate on plaintiffs'
mortgage would never exceed 4.798% when such
        representations were false;

7       c.   Representing that the initial interest rate on
plaintiff' [*sic*] mortgage would be 1.95% and that
8           the interest rate on the loan would never exceed
4.798% and, by doing so, misleading plaintiffs as
9           to the cost of credit;

10      d.   Representing to plaintiffs that they would be able
to switch to a fixed rate loan at no cost when in
fact the loan provided for a substantial
11          prepayment penalty during the first three years;

12      e.   Representing to plaintiffs that Kuivenhoven and
Transamerican were working for plaintiffs and were
loyal to their best interests when, in fact,
13          Kuivenhoven and Transamerican were employed by an
adverse party;

14      f.   Representing to plaintiffs that they would be
given the best possible loan terms and that their
15          mortgage interest rate would start at 1.95% and
never exceed 4.798%.

16      g.   By engaging in a bait and switch by baiting
plaintiffs into the mortgage transaction by
17          offering a relatively favorable set of terms and
then switching to less favorable terms.

18      h.   By violating Business & Professions Code § 17500
et seq. As set forth in paragraphs 11 through 25
19          herein.

20  SAC, ¶ 52.  With the exception of ¶ 52(e), each of these

21  allegations concerns World's advertising practices or fees and are

22  expressly preempted by the § 560.2.  <u>See</u> <u>Silvas</u> 514 F.3d at 1006.

23      Hence, Plaintiffs' only remaining viable claim falls under

24  ¶ 52(e).  Plaintiffs allege that Mr. Kuivenhoven improperly

25  maintained and misrepresented to Plaintiffs his relationship with

26  World.  <u>Id</u>.  Additionally, Plaintiffs argue that, under an agency

27  theory, World is responsible for Mr. Kuivenhoven's

28  misrepresentations.

1  Therefore, as a threshold matter, this Court must analyze
2  the sufficiency of Plaintiffs' agency allegations.  "One of the
3  chief characteristics of an agency relationship is the authority
4  to act for and in the place of the principal for the purposes of
5  bringing him or her into legal relations with third parties."
6  DSU Aviation, LLC v. PCMT Aviation, LLC, 2007 WL 3456564, *5
7  (N.D. Cal. 2007).  "The other important aspect in determining the
8  existence of an agency relationship is the degree of control
9  exercised by the principal over the activities of the agent."
10 Id.  "If the principal has the right to control the agent's day-
11 to-day operations, then an agency relationship exists.  If,
12 however, the principal has no control over the day-to-day
13 operations and only has [the] right to dictate the end result of
14 the agent's activities, then an 'independent contractor'
15 relationship exists."  Figi Graphics, Inc. v. Dollar Gen. Corp.,
16 33 F. Supp. 2d 1263, 1266 (S.D. Cal. 1998) (citing In re Coupon
17 Clearing Services, 113 F.3d 1090, 1099-1100 (9th Cir. 1997)).
18     Plaintiffs fail to allege sufficient facts to show that
19 Mr. Kuivenhoven had the authority to act on behalf of World.
20 Plaintiffs generally allege that Mr. Kuivenhoven is an agent and
21 co-conspirator of World.  Compl., ¶ 7.  Plaintiffs also
22 specifically allege that "World paid Mr. Kuivenhoven to market
23 its loans pursuant to a contract which gave World the right to
24 control who he could market to and what Mr. Kuivenhoven could say
25 about the World loan products he sold.
26 ///
27 ///
28 ///

1  The agreement between World and Mr. Kuivenhoven also prohibited

2  Mr. Kuivenhoven from disclosing to customers his affiliation and

3  agency relationship with World.  Compl., ¶ 18.  Finally,

4  Plaintiffs allege that Mr. Kuivenhoven and Transamerican "were

5  employed by an adverse party."  Compl. 52(e).

6       Plaintiffs' only allegations supporting its agency theory

7  stem from the letter from World to Mr. Kuivenhoven in which World

8  stated that Mr. Kuivenhoven was prohibited from representing

9  himself as an agent of Plaintiff. That letter indicates only that

10 World hired Mr. Kuivenhoven to market its products.  Neither that

11 letter, nor Plaintiffs' conclusory allegations suffice to show

12 that Mr. Kuivenhoven had the ability to act on behalf of World.

13      Alternatively, Plaintiffs attempt to premise World's

14 liability on a conspiracy allegation.  "The elements of an action

15 for civil conspiracy are the formation and operation of the

16 conspiracy and damage resulting to plaintiff from an act or acts

17 done in furtherance of the common design."  Doctors' Co. v.

18 Super. Ct., 49 Cal. 3d 39, 44 (1989), superseded on other grounds

19 as stated in Pavicich v. Santucci, 85 Cal. App. 4th 382 (6th

20 Dist. 2000) (quoting Mox Inc. v. Woods, 202 Cal. 675, 677-678

21 (1927)).

22      Plaintiffs allege no facts, other than those related to the

23 above discussed letter, to support the formation of such a

24 conspiracy or any subsequent acts done in furtherance of a

25 conspiracy.  As above, that letter provides no support for

26 Plaintiffs' conspiracy allegations because it purports merely to

27 prohibit Mr. Kuivenhoven from representing himself as an agent of

28 World.

1    Nothing about the letter indicates that World conspired with Mr.

2    Kuivenhoven to conceal their relationship altogether or to engage

3    in any other unfair practice.  Therefore, Plaintiffs' allegations

4    are insufficient to state a claim against World and World's

5    Motion to Dismiss Plaintiffs' Second Cause of Action is granted

6    with leave to amend.

7

8            C.   **Plaintiffs Fail to State a Claim for Breach of
                  Fiduciary Duty Against World**

9

10           Plaintiffs argue that, by participating in and inducing

11   Mr. Kuivenhoven to act against Plaintiffs' interests and on

12   behalf of World, World aided and abetted Mr. Kuivenhoven in

13   breaching the fiduciary duties he owed Plaintiffs.  World argues

14   that Plaintiffs' breach of fiduciary duty cause of action fails

15   to state a claim and that it is preempted by HOLA.

16           Again, as a threshold matter, this Court will determine if

17   World can be held liable for Mr. Kuivenhoven's conduct.  As

18   discussed above, Plaintiffs' agency and conspiracy allegations

19   are insufficient to impart liability.  Plaintiffs' only

20   alternative theory of liability is based on aiding and abetting.

21   "[U]nder California law, a defendant may be found liable for

22   aiding and abetting a breach of fiduciary duty even though the

23   defendant owes no independent duty to the plaintiff, so long as

24   the aider and abettor knows of, and substantially assists, the

25   primary violator's breach of duty."  <u>Neilson v. Union Bank of</u>

26   <u>Cal.</u>, N.A., 290 F. Supp. 2d 1101, 1137 (C.D. Cal. 2003)

27   ///

28   ///

1       In this case, Plaintiffs allege that World "knowingly

2   participated in and induced Kuivenhoven's and Transamerican's

3   breach of fiduciary duty."  Compl., ¶ 71.  Plaintiffs again rely

4   on their conclusory allegation that World prohibited

5   Mr. Kuivenhoven from disclosing to Plaintiffs' his relationship

6   with World.  Compl., ¶ 18.  However, Plaintiffs' Complaint is

7   completely lacking in any factual allegations to support its

8   theory.  Plaintiffs' only allegations against World stem from the

9   same letter discussed above.  That letter does not indicate that

10  World knew or assisted in any actions by Mr. Kuivenhoven which

11  may have resulted in a breach of his duties to Plaintiffs.[4]

12  Additionally, since Plaintiffs have not alleged any independent

13  facts to support their assertion that World knowingly induced, or

14  provided substantial assistance to, Mr. Kuivenhoven, Plaintiffs'

15  claim must fail.  World's Motion to Dismiss Plaintiffs' Fifth

16  Cause of Action is granted with leave to amend.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  _____

26      [4] Notably, in light of the inadequacy of Plaintiffs' agency
    allegations, which, for purposes of this Motion render moot
27  Plaintiffs' argument that Mr. Kuivenhoven was acting as World's
    agent, the letter simply proscribes Mr. Kuivenhoven from
28  misrepresenting himself as the agent of World.

1    **D.   Plaintiffs Cannot Pursue Punitive Damages Under Their
         Remaining Claims**

2

3        World asks this Court to strike Plaintiffs' claim for

4    punitive damages.  Plaintiffs do not contest World's Motion.

5    Moreover, since Plaintiffs' only remaining cause of action arises

6    under TILA, which prescribes its own remedies under 15 U.S.C.

7    § 1640 and does not provide for the recovery of punitive damages,

8    Plaintiffs' prayer for punitive damages cannot stand.[5]

9    Therefore, World's Motion to Strike is granted.

10

11                            **CONCLUSION**

12

13       Plaintiffs have stated TILA, UCL, and breach of fiduciary

14   duty claims against World.  Since Plaintiffs' TILA allegations

15   are sufficient to state a claim, World's Motion to Dismiss

16   Plaintiffs' First Cause of Action is DENIED.

17

18       ───────────────────

         [5] Section 1640 provides in pertinent part:
19
         Except as otherwise provided in this section, any creditor
20       who fails to comply with any requirement imposed under this
         part...
21       (1) any actual damage sustained by such person as a result
         of the failure;
22       (2)(A) (i) in the case of an individual action twice the
         amount of any finance charge in connection with the
23       transaction, (ii) in the case of an individual action
         relating to a consumer lease under part E of this
24       subchapter, 25 per centum of the total amount of monthly
         payments under the lease, except that the liability under
25       this subparagraph shall not be less than $100 nor greater
         than $1,000, or (iii) in the case of an individual action
26       relating to a credit transaction not under an open end
         credit plan that is secured by real property or a dwelling,
27       not less than $200 or greater than $2,000...

28       15 U.S.C. § 1640(a)(1), (2)(A).

                                  21

1    However, since Plaintiffs failed to allege sufficient facts

2    to support the remainder of their claims, World's Motion to

3    Dismiss Plaintiffs' Second and Fifth Causes of Action is GRANTED

4    with leave to amend. Plaintiffs shall have twenty (20)days from

5    the date of this Memorandum and Order to file an amended

6    complaint.

7        Finally, because Plaintiffs have not stated a cause of

8    action to support a claim for punitive damages, World's Motion to

9    Strike Plaintiffs' prayer for such damages is GRANTED with leave

10   to amend.  Plaintiffs shall have twenty (20)days from the date of

11   this Memorandum and Order to file an amended complaint.

12        IT IS SO ORDERED.

13   Dated: June 11, 2008

14

15   _____

16   MORRISON C. ENGLAND, JR.
     UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

22