1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   ELMER and KATHY BUICK,              No. 2:07-CV-01447-MCE-KJM

12            Plaintiffs,

13        v.                             MEMORANDUM AND ORDER

14   WORLD SAVINGS BANK,
     TRANSAMERICAN FINANCIAL
15   CORPORATION,

16            Defendants.

17                         ----oo0oo----

18

19        Plaintiffs, Elmer and Kathy Buick, filed this action against

20   Defendants Transamerican Financial Corporation ("Transamerican")

21   and World Savings Bank ("World") for claims arising under the

22   Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and

23   California's Unfair Business Practices Act ("UCL"), California

24   Business & Professions Code § 17200 et seq., as well as for

25   fraud, negligent misrepresentation, and breach of fiduciary duty.

26   Plaintiffs did not raise their TILA claim against Transamerica,

27   and have since dropped their fraud and negligent

28   misrepresentation claims against all parties.

                                  1

Therefore, Plaintiffs allege only UCL and breach of fiduciary duty claims against Transamerican.  Presently before the Court is Transamerican's Motion to Dismiss those claims.[1]

## BACKGROUND[2]

In 2004, World marketed its Pick-a-Payment[SM] Equity Builder[SM] Mortgage.  That loan had an initial low interest rate that expired after three months.  The loan was structured in such a way that it could potentially result in negative amortization. Negative amortization occurs when a customer makes the required minimum payments, but the principal owed on the loan increases, rather than decreases, over the life of the loan.  Plaintiffs allege that referring to a loan that can result in negative amortization as an "Equity Builder[SM]" loan is false and misleading.

Plaintiffs further allege that World knew or should have known that brokers marketing that Equity Builder[SM] loan would promote its low initial rate and minimize both its higher eventual interest rates and its potential for negative amortization.  Additionally, Plaintiffs allege that World knew that the label Equity Builder[SM] was misleading, confusing, and conflicted with other disclosures.

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 78-230(h).

[2] The following facts are taken primarily from Plaintiffs' Second Amended Complaint ("SAC").  For the purposes of this Motion, the Court accepts these facts as true and makes all inferences in the light most favorable to Plaintiffs.

According to Plaintiffs, World provided customers with documents that referenced only the low initial rate, without explaining that the rate would increase in the future.

World marketed its products through agents.  One agent was Dirk Kuivenhoven, also known as Dirk Johnson, also known as Mark Rawlings ("Mr. Kuivenhoven").  Mr. Kuivenhoven, a licensed California mortgage broker, was Transamerican's branch manager in 2004.

In March of 2004, under the alias Dirk Johnson and on the letterhead of Direct Lenders, a name Plaintiffs believe to be an alias of Transamerican, Mr. Kuivenhoven sent a letter to Plaintiffs offering to reduce their mortgage payments by refinancing their loan at a 3.5% interest rate.  Specifically that letter stated:

> Here's what you can expect from me:
> 1.  I handle all of the details from your first call to closing.
> 2.  I keep you up to date and well informed as we walk thru [sic] the process.
> 3.  I make sure you get the best rate and loan possible.
> 4.  I give you honest straight forward information.

When Plaintiffs subsequently met with Mr. Kuivenhoven, he told them he would get them an Equity Builder$^{SM}$ loan with an initial rate of 1.95% and that the loan balance would decrease as long as Plaintiffs made the required minimum payments. Mr. Kuivenhoven also allegedly assured them that they could convert the loan to a fixed rate loan by contacting World, that the interest rate on the mortgage would never exceed 4.798%, and that the bi-weekly payments would peak at $616 in the eighth year.

When Mr. Kuivenhoven prepared the World loan application, he indicated that the interest rate would be 1.95%, and checked the "Other" box to indicate the loan type, but he did not include any elaboration of the details of the particular type of loan.

Plaintiffs' loan closed on June 10, 2004.  World provided Plaintiffs with a copy of their loan application and Uniform Underwriting and Transmittal Summary, both of which showed a 1.95% interest rate.  Additionally, World delivered each borrower copies of the notice of his or her right to rescind ("Notice"), though Plaintiffs allege that Ms. Buick received only one copy, rather than the two copies required under the regulations.

Plaintiffs further allege that they trusted, believed and reasonably relied upon Mr. Kuivenhoven's representations about the Equity Builder$^{SM}$ loan.  Therefore, they did not read the loan papers on signing because they assumed those documents were consistent with Mr. Kuivenhoven's representations.

Plaintiffs allege that the loan terms were not as promised and that they were victims of a bait and switch.  Though the initial loan rate was 1.95%, that rate was only applicable for up to two months after closing and could adjust up to 11.950%. According to Plaintiffs, their current loan terms are far worse than those under their prior mortgage, the deal they were promised, or the loan that they could have gotten in a fair market transaction.

///

///

///

///

4

1                              **STANDARD**

2        **A.   Motion to Dismiss Under Rule 12(b)(6)**

3

4        On a motion to dismiss for failure to state a claim under

5   Rule 12(b)(6), all allegations of material fact must be accepted

6   as true and construed in the light most favorable to the

7   nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,

8   337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and

9   plain statement of the claim showing that the pleader is entitled

10  to relief" in order to "give the defendant fair notice of what

11  the ... claim is and the grounds upon which it rests."  Bell Atl.

12  Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007)

13  (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  While a

14  complaint attacked by a Rule 12(b)(6) motion to dismiss does not

15  need detailed factual allegations, a plaintiff's obligation to

16  provide the "grounds" of his "entitlement to relief" requires

17  more than labels and conclusions, and a formulaic recitation of

18  the elements of a cause of action will not do.  Id. at 1964-65

19  (internal citations and quotations omitted).  Factual allegations

20  must be enough to raise a right to relief above the speculative

21  level.  Id. at 1965 (citing 5 C. Wright & A. Miller, Federal

22  Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The

23  pleading must contain something more...than...a statement of

24  facts that merely creates a suspicion [of] a legally cognizable

25  right of action")).

26  ///

27  ///

28  ///

1   A court granting a motion to dismiss a complaint must then
2   decide whether to grant leave to amend.  A court should "freely
3   give" leave to amend when there is no "undue delay, bad faith[,]
4   dilatory motive on the part of the movant, ... undue prejudice to
5   the opposing party by virtue of ... the amendment, [or] futility
6   of the amendment...."  Fed. R. Civ. P. 15(a); Foman v. Davis, 371
7   U.S. 178, 182 (1962).  Generally, leave to amend is denied only
8   when it is clear the deficiencies of the complaint cannot be
9   cured by amendment.  DeSoto v. Yellow Freight Sys., Inc., 957
10  F.2d 655, 658 (9th Cir. 1992).

11
12      **B.    General Pleading Requirements**
13

14  "Rule 8(a)(2)...requires a 'showing,' rather than a blanket
15  assertion of entitlement to relief.  Without some factual
16  allegation in the complaint, it is hard to see how a claimant
17  could satisfy the requirements of providing not only 'fair
18  notice' of the nature of the claim, but also 'grounds' on which
19  the claim rests."  Twombly, 127 S.Ct. at 1965 n.3. (factual
20  allegations necessary to plead "grounds" on which claim rests.)

21  A pleading must contain "only enough facts to state a claim
22  to relief that is plausible on its face."  Id. at 1974.  If the
23  "plaintiffs...have not nudged their claims across the line from
24  conceivable to plausible, their complaint must be dismissed."
25  Id.   Nevertheless, "[a] well-pleaded complaint may proceed even
26  if it strikes a savvy judge that actual proof of those facts is
27  improbable, and 'that a recovery is very remote and unlikely.'"
28  Id. at 1965.

**ANALYSIS**

**A.    Plaintiff's Second Cause of Action - Violation of California Law - Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

Transamerican asks this Court to dismiss Plaintiffs' second cause of action arguing that Plaintiffs lack standing to bring a UCL claim and that the statutory scheme does not provide for the recovery of actual damages.  Transamerican also generally attacks the entire Complaint based on Plaintiffs' admitted failure to read the loan documents upon signing.[3]

**1.    Plaintiffs Have Standing to Bring a UCL Claim under California Business and Professions Code § 17200 et seq.**

Transamerican argues that Plaintiffs lack standing to bring a claim under California's Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200 et seq., because Plaintiffs are not the Attorney General, a district attorney or county counsel, and do not represent others as allegedly required by § 17204.  That section provides:

///

///

///

---

[3] To the extent Transamerican's argument that Plaintiffs could not have reasonably relied on Transamerican's and Mr. Kuivenhoven's statements was directed primarily at Plaintiffs' Misrepresentation claim, that argument is moot. However, to the extent Transamerican relies on its argument as grounds for its Motion to Dismiss the entire Complaint, the Court will briefly address it under each remaining cause of action.

1

2          Actions for any relief pursuant to this chapter shall
3  be prosecuted exclusively in a court of competent
        jurisdiction by the Attorney General or any district
4  attorney or by any county counsel authorized by
        agreement with the district attorney in actions
5  involving violation of a county ordinance, or any city
        attorney of a city having a population in excess of
6  750,000, or by a city attorney in any city and county
        and, with the consent of the district attorney, by a
7  city prosecutor in any city having a full-time city
        prosecutor in the name of the people of the State of
8  California upon their own complaint or upon the
        complaint of any board, officer, person, corporation,
9  or association, or by any person who has suffered
        injury in fact and has lost money or property as a
        result of the unfair competition.

10

11  Cal. Bus. & Prof. Code § 17204.

12          Transamerican misreads the statute.  The final clause states

13  specifically, "or by any person who has suffered injury in fact

14  and has lost money or property as a result of the unfair

15  competition."  Id.  Transamerican appears to read that language

16  as modifying the prior section regarding on whose behalf a city

17  attorney may file a complaint.  However, the final clause grants

18  individuals the power to file claims on their own behalf.

19          The Court's reading of the statute is confirmed in

20  Californians for Disability Rights v. Mervyn's, LLC, in which

21  that court stated "California previously authorized any person

22  acting for the general public to sue for relief from unfair

23  competition.  [Now] a private person has standing to sue only if

24  he or she has suffered injury in fact and has lost money or

25  property as a result of such unfair competition."  39 Cal. 4th

26  223, 227 (2006) (internal quotations and citations omitted).

27  ///

28  ///

Plaintiffs have adequately pled that they suffered injury and lost money as a direct result of Transamerican's actions. Hence, Transamerican's argument that Plaintiffs lack standing to bring their UCL claim fails.

### 2.   Plaintiffs Assert a Cognizable Claim for Restitution Under § 17200 et seq.

Transamerican next argues that Plaintiffs UCL claim must fail because Plaintiffs seek damages, which are not recoverable under the statutory scheme.  However, Transamerican's argument ignores the fact that Plaintiffs seek restitution, a proper remedy for violations of California's UCL.  Specifically, "[a]lthough the UCL targets a wide range of misconduct, its remedies are limited because UCL actions are equitable in nature. Damages cannot be recovered, and plaintiffs are generally limited to injunctive relief and restitution." Buckland v. Threshold Enterprises, Ltd., 155 Cal. App. 4th 798, 812 (2d Dist. 2007) (internal citations omitted).  "In the context of the UCL, 'restitution' is meant to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest, and is so limited."  In re First Alliance Mortg. Co., 471 F.3d 977, 996 (9th Cir. 2006).

///

///

///

///

///

///

9

1   Transamerican attempts to rebut Plaintiffs' prayer for
2   restitution by arguing that Plaintiffs paid nothing recoverable
3   to Transamerican.  However, Plaintiffs have alleged sufficient
4   facts to show first that Mr. Kuivenhoven was acting on behalf of
5   Transamerican in soliciting and binding Plaintiffs' business and
6   second that they paid fees to Mr. Kuivenhoven as the branch
7   manager of Tranamerican.  See SAC, Exh. C, D, E, G.

8   Plaintiffs attached to their Complaint a letter from World
9   to Mr. Kuivenhoven in his capacity with Transamerican, which
10  indicates that World was engaging Mr. Kuivenhoven as a Preferred
11  Mortgage Broker in that capacity.  SAC, Exh. C.  Mr. Kuivenhoven
12  contacted Plaintiffs regarding refinancing their mortgage, and
13  thereafter provided numerous worksheets and estimates using the
14  Transamerican name.  SAC, Exh. D, E, G.

15  Transamerican does not dispute Plaintiffs' allegations that
16  they paid funds to Mr. Kuivenhoven, Transamerican's branch
17  manager.  Neither does Transamerican dispute Plaintiffs'
18  allegations that Mr. Kuivenhoven initially solicited their
19  business on the letterhead of Direct Lenders, which Plaintiffs
20  believe to be an alias for Transamerican.  Finally, Transamerican
21  does not contest Plaintiffs' allegations that they paid
22  Mr. Kuivenhoven and Transamerican to act as their broker.
23  Therefore, for purposes of Transamerican's Motion to Dismiss,
24  Plaintiff's SAC is sufficient to state a claim against
25  Transamerican because it can reasonably be inferred from their
26  allegations that Mr. Kuivenhoven was acting on, and was paid on,
27  Transamerican's behalf.
28  ///

10

### 3.   Plaintiffs' Failure to Read Their Loan Documents Is Not Fatal to Their UCL Claim.

Transamerican's final argument in favor of dismissing Plaintiffs' UCL claim is that Plaintiffs cannot prove they reasonably relied on any of Mr. Kuivenhoven's statements because they admit they never read the loan documents.  Transamerican argues solely that Plaintiffs' failure to read their loan documents rendered any such reliance unreasonable.  However, Plaintiffs allege numerous facts to indicate that Mr. Kuivenhoven represented to them that he would broker a deal that would operate in their best interests.  The reasonableness of their reliance on his statements is a factual issue, ultimately to be decided on a more developed record.  At this point, construing all allegations in the light most favorable to the non-moving party, Plaintiffs' SAC sufficiently states a claim under California's UCL, and Transamerican has not shown otherwise. Transamerican's Motion to Dismiss Plaintiffs' Second Cause of Action is denied.

### B.   Plaintiffs' Fifth Cause of Action - Violation of California Law - Breach of Fiduciary Duty

#### 1.   Plaintiffs' Claims are Not Barred by the Applicable Statute of Limitations

The only challenge Transamerican raises directly to Plaintiff's breach of fiduciary duty claim is that, pursuant to California Code of Civil Procedure § 312, the claim is barred by a two-year statute of limitations.  Transamerican's contention is incorrect.

11

1    Transamerican asserts that Plaintiffs' breach of fiduciary
2    duty claims are governed by California Code of Civil Procedure
3    §§ 312 and 339.  Section 312 states, "Civil actions, without
4    exception, can only be commenced within the periods prescribed in
5    this title, after the cause of action shall have accrued, unless
6    where, in special cases, a different limitation is prescribed by
7    statute."  Cal. Code of Civ. Pro. § 312.  Section 339 elaborates,
8    "Within two years: 1. An action upon a contract, obligation or
9    liability not founded upon an instrument..."  Cal. Code of Civ.
10   Pro. § 339.  Nevertheless, Transamerican's argument fails because
11   it is contrary to clearly established precedent.

12   Plaintiffs do not sue based on the express contractual
13   agreement between them and Transamerican.  Rather, "[t]his action
14   is based upon the alleged relationship of the parties...and the
15   fiduciary duties which the law imposes upon such parties...An
16   express agreement between the parties may govern their
17   relationship, but to the extent that their respective rights and
18   duties are not spelled out in an express agreement, the law
19   imposes obligations arising out of the nature of their fiduciary
20   relationship."  Manok v. Fishman, 31 Cal. App. 3d 208, 213 (2d
21   Dist. 1973) (discussing the statute of limitations applicable to
22   an action between partners).  Hence, "claims for breach of
23   fiduciary duty are governed by the four-year statute of
24   limitations, pursuant to CCP § 443."  Solomon v. North American
25   Life and Cas. Ins. Co., 151 F.3d 1132, 1138 (9th Cir. 1998).
26   Since the facts underlying this dispute occurred in 2004 and
27   since Plaintiffs filed their claim in May of 2007, Plaintiffs'
28   claim is not time-barred.

12

1
      **2.   Plaintiffs' Failure to Read Their Loan Documents is Not Fatal to Their Breach of Fiduciary Duty Claim**

2

3

4       Since Transamerican argues that Plaintiffs' entire SAC

5 should be dismissed based on their failure to read the loan

6 documents, this Court will briefly analyze that argument here.

7 "To state a claim for breach of fiduciary duty, a complaint must

8 allege the existence of a fiduciary duty, its breach, and damages

9 resulting therefrom." Neilson v. Union Bank of Cal., N.A., 290

10 F. Supp. 2d 1101, 1137 (C.D. Cal. 2003).  Notably, Transamerican

11 does not challenge the Complaint's allegations that it owed

12 Plaintiffs the duties of a fiduciary.  Instead, Transamerican,

13 through its repeated argument that Plaintiffs should have read

14 the loan documents, seems to argue that it did not breach those

15 duties.  Transamerican's argument is fatally flawed.

16       Plaintiffs specifically allege that Transamerican "knowingly

17 acted against [P]laintiffs' best interests and instead acted on

18 behalf of World whose interests were adverse to [P]laintiffs.

19 Kuivenhoven and Transamerican knowingly failed to disclose to

20 Plaintiffs their conflict of interest." Compl., ¶ 72.  The

21 relationship between Transamerican and World would not have been

22 apparent to Plaintiffs from reading the loan documents.  Hence,

23 Plaintiffs' failure to read those forms is irrelevant to their

24 Breach of Fiduciary Duty claim.  Plaintiffs have adequately

25 stated a claim under their Fifth Cause of Action and

26 Transamerican's Motion to Dismiss is denied.

27 ///

28 ///

**C.    Transamerican's Motions to Strike and for More Definite Statement**

       **1.    Motion to Strike**

Federal Rule of Civil Procedure 12(f) provides, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "A motion to strike under Rule 12(f) should be denied unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation."  <u>Gay-Straight Alliance Network v. Visalia Unified Sch. Dist.</u>, 262 F. Supp. 2d 1088, 1099 (E.D. Cal. 2001).

Transamerican appears to ask this Court, as an alternative to its Motion to Dismiss, to strike Plaintiffs' UCL claim and breach of fiduciary duty claim on the grounds already discussed above.  Since this Court found Plaintiffs' allegations sufficient to state a claim, Transamerican's request to strike fails as well.

Additionally, Transamerican argues that several of Plaintiffs' specific allegations should be stricken because they are vague, ambiguous, contradictory, or irrelevant.  This Court cannot say that "no evidence in support of [those] allegation[s] would be admissible, or [that] those issues could have no possible bearing on the issues in the litigation."  Id. at 1099.  Therefore, Transamerican's Motion to strike is denied.

///

///

///

14

## 2.   Motion for More Definite Statement

As another alternative to its Motion to Dismiss, Transamerican asks that this Court grant its Motion for More Definite Statement regarding numerous of Plaintiffs' allegations. Before interposing a responsive pleading, a defendant may move for a more definitive statement "[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading . . . ." Fed. R. Civ. P. 12(e). "The Court must deny the motion if the complaint is specific enough to apprise defendant of the substance of the claim being asserted. The Court should also deny the motion if the detail sought by a motion for more definite statement is obtainable through discovery." Gay-Straight Alliance Network, 262 F. Supp. 2d at 1099. Due to the liberal pleading standards in the federal courts embodied in Rule 8(e) and the availability of extensive discovery, courts should not freely grant motions for more definitive statements. Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981).

Transamerican makes numerous factual arguments via its Motion. Since the information it seeks will be obtainable during discovery, and since Plaintiffs' pleading is more than sufficient to enable Transamerican to craft a response, Transamerican's Motion is denied.

///
///
///
///

15

**CONCLUSION**

Hence, Transamerican's Motion to Dismiss each of Plaintiffs' claims for relief is DENIED.  Transamerican's Motion to Strike and Motion for More Definitive Statement regarding each of Plaintiffs' claims and various individual allegations are also DENIED.

IT IS SO ORDERED.

Dated: June 16, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

16